## ISABELLA B. GRAHAM, COLEGATE N. SMITH ET AL. *vs.* ELIZABETH G. WHITRIDGE ET AL.

*Perpetuities—Rules of Interpretation—Remainders too Remote—When Remainders After Life Estate May be Rejected—Power of Appointment by Will—Validly Exercised in Part Only—Disposition of the Unappointed Portion of Settled Property—Election Between Legacies—Bequest of a Remainder to the Next of Kindred of the Life Tenant—Life Estates Valid and Remainders Limited After Invalid Termination of Trust Estate—Appointment of Trustee to Preserve Remainders—Interest on Legacy.*

The rule against perpetuities is a rule of law and not one of interpretation.

A will must be construed in the first instance without reference to the rule against perpetuities and the real intention of the testator thus ascertained. Then the rule should be applied to determine the validity of the dispositions made.

Whenever by deed or will property is rendered inalienable or its vesting is deferred for a longer period than a life or lives in being at the time the deed or will takes effect and twenty-one years thereafter, the devise or grant creates a perpetuity and is void.

When a will is made in execution of a power of appointment conferred by another will, the validity of the appointment made by the former, so far as concerns the rule against perpetuities, is to be ascertained by reading them as if contained in the will of the donor of the power.

When remainders after a life estate are given to vest upon a contingency which might or might not happen during a life or lives in being at the time of the gift and twenty-one years thereafter, then the contingency is too remote and remainders fail to take effect. In determining the question of remoteness, regard is to be had to possible and not merely to actual events. It is not to be determined by looking back on events which have occurred and seeing whether the estate has extended beyond the prescribed limit, but by looking forward from the time the limitation was made and seeing whether, according to its terms, there was then a possibility that it might so extend.

Where an absolute estate has been clearly given and subsequent repugnant limitations, cutting it down to a life estate, have been added and these limitations are void for remoteness, they will be disregarded and the absolute estate upheld.

But this principle is not applicable when the void limitations are added to the gift of an estate for life only, with remainders to others in fee.

When a testator, in exercising a power of appointment over settled property under which he may create such estates as he chooses, makes certain limitations of the property which are valid and others which are void because in conflict with the rule against perpetuities, then the failure to execute, effectually, the entire power of appointment does not operate to divest those appointments that were validly made.

When an estate is devised to one for life, followed by limitations to others which are void because creating perpetuities, then the devise for life is valid and the remainders are treated as stricken out.

When such devise is made in the execution of a power of appointment, then the void remainders pass as directed by the donor of the power in the event of its non-execution.

A will, which conferred upon the devisee a power to appoint by will the settled property among a class of persons, also provided that in the event of a failure to exercise the power, the property should be divided among certain persons. The donee of the power made a will giving a portion of the property to A., which was a valid execution of the power. Other parts of the property were given upon void limitations so that these parts, being undisposed of, passed to the class of persons designated in the will of the donor of the power to take in the event o its non-execution. A. was one of this class. *Held*, that A. is not required to elect between these two gifts, but is entitled to both.

Property was given by will to trustees with directions to pay the income thereof to A. for life then to divide the principal among A.'s children, and if she died without issue, then among her brothers and sisters, and if none such living, then to divide the same among A.'s "next of kindred." A. died leaving no issue and no living brother or sister, but a nephew and a niece and certain grandnephews and grand nieces. *Held*, that A's nephew and niece are entitled to the property to the exclusion of the grandnephews and grandnieces.

The will of George B., who died in 1859, gave a certain share of his residuary estate to trustees for the benefit of his daughter, Grace, during her life and in the event of her death, without leaving descendants, then to hold the property for such of the other children of.the testator, or their descendants and for such estates therein and with such limitations as the daughter Grace, may, by last will, name and appoint to take. In case of her failure to execute the power of appointment, then the trustees were to hold the property for all of the testator's other children, or the descendants of those who may be dead at that time, all to take *per stirpes*. Testator's daughter, by a will probated in 1903, disposed of the property so held in trust, as follows: She gave a certain sum to her niece, Mrs. W., absolutely. By the second clause she gave other property to a grandniece, Isabella, the income only to be paid to her for life, with the remainder over to her descendants in fee. Other shares were given to two other grandnieces The will then provided by the fifth clause that the residue of the property should be divided into eight equal parts, and directed that one of said parts be allotted to each of the eight named children of her nephew, G. B., the income only, therefrom, to be paid respectively to each said child during his or her natural life, with the remainder over to her or his descendant, if only one, or descendants, if more than one, in equal parts, in fee. *Held*, that the limitations over to the descendants of Isabella and to the descendants of the eight children of G. B., all nine legatees being great-grandchildren of the donor of the power, are void for remoteness under the rule against perpetuities, because as none of these nine persons were in being when the testator, George B., died, and as it is possible that more than twenty-one years and a fraction, may expire since the death of the testatrix Grace before the termination of the life estates created by her will and the vesting of the remainders, that possibility renders them void.

*Held*, further, that although the above-mentioned remainders are void, the intervening life estates given to the said great-grandchildren are valid, because these estates were given to persons capable of taking at the death of the testatrix, and having vested within the time allowed by the rule against perpetuities, they cannot be divested by the void limitations engrafted upon them.

*Held*, further, that the remainders, so held to be void, being an unappointed portion of the settled property, must be disposed of as directed by the will of the donor in the event of a failure to execute the

power and vest subject to the life estates in the descendants of George B., *per stirpes.*

*Held,* further, that Mrs. W., who thus receives a share of the void remainders and to whom a part of the settled property was also given, absolutely, by the testatrix, is entitled to take both parts and the doctrine of equitable election is not applicable.

In a supplementary judgment *held,*

That the above-mentioned life estates so held to be valid are legal and not equitable estates, because under the will of George B., the trustees to whom the settled property was given had no active duties to perform after the death of his daughter, the testatrix, but they were merely directed to hold the property to or for the persons named in the execution of the power of appointment, or for the descendants of the testator.

That since these life tenants are also entitled to vested remainders in a portion of the unappointed property, the two estates coalesce and they take absolute estates in this portion.

That with respect to that part of the property given to the life tenants, in which they have no remainders, but which passes after the termination of the life estates to other persons under the will of George B., the trust also ceases. But these remaindermen may procure the appointment of a trustee to preserve the fund and pay the income to the life tenants.

That to preserve equality among the remaindermen, the trustees appointed for the preservation of the remainders should apportion the investments in which the trust funds constituting that part of the remainders may be invested into as many equal parts as there are life estates.

That the persons to whom the testatrix allotted sums of money, absolutely, out of the settled property, are entitled to interest on these legcies from one year after her death.

When an estate is given to trustees to pay the income to a person for life and at his death merely to hold the same for the use of other persons named, the trust ceases upon the death of the life tenant for the reason that it remains no longer an active trust. The Statute of Uses in such cases immediately executes the use in those who are limited to take the estate after the death of the life tenant.

Appeal from Circuit Court No. 2, of Baltimore City (BAER, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Arthur W. Machen* and *W. Irvine Cross* for Colegate N. Smith *et al.*, appellants.

As none of the children of George Brown, the younger, nor Isabella Brown Graham was in being at the time of the death of the testator, George Brown, it is manifest that the qualifications and limitations, super-added to the original allotment of the residue to Colegate Smith, Isabella Merryman, Fannie W. Keith, Sarah Brown, Grace Greenway Brown, Carroll Brown, George Brown and Irwin Brown, are void under the rule against perpetuities. The entire paragraph admits of three possible constructions.

1. That the clause making the allotment of the eighth parts of the residue to the children of George Brown, deceased, is capable of being taken as complete in itself, nothing more being needed to make a perfect appointment beyond the words, "As to the rest and residue of that portion of the estate so as aforesaid specified in my father's said will, not hereinbefore disposed of by me, together with any additions thereto, &c., I direct that the same be divided into eight equal parts, and that one-eighth part be allotted to each of the following named children of my said nephew, George Brown, viz : Colegate Smith, Isabella Merryman, Fannie W. Keith, Sarah Brown, Grace Greenway Brown, Carroll Brown, George Brown and Irwin Brown." And the rest can be rejected, pursuant to a rule firmly established by a line of cases which may be thus expressed : A clear appointment to an object of the power of the absolute interest, accompanied by a restriction trust or modifying limitation which infringes the rule againgst perpetuities, operates as an absolute appointment, the modifying clause being rejected as invalid. This, we claim, is the true construction of Mrs. Greenway's will, and gives effect to her *main* purpose and intent ; while the invalidity of the engrafted provisions and limitations makes *them* abortive, and requires that they be stricken out of the will.

2. If we fail to maintain the first point, the *alternative* construction gives a life estate to each of the children of George Brown, and the limitation to the descendants being clearly

void, the result would be a failure to dispose of the remainders by exercise of the power, leaving them to go as unappointed property, under the provisions of the will of *George Brown*, the testator.

3. The third view of the clause is that which was adopted by the learned Judge of the lower Court, namely, that the whole paragraph—the entire disposition of the residue of the two-fourteenths of the residuary estate of the original testator is void; that no effect is to be given to any part of it. But if this Court, also, shall hold that the clause is wholly void, we shall yet contend that the decree of the Circuit Court is erroneous in the manner in which it deals with such a state of case. For, *first*, nothing can be clearer than that Mrs. Greenway never intended that the appointments which under this construction, are apparently good, viz. : the $100,000 to Mrs. Whitridge and $20,000 to the two daughters of Mr. Alexander Brown, should stand, and the appointment to the children of her nephew, George Brown, the object of so much solicitude, be frustrated. Her will declares a purpose to appoint the entire two-fourteenths. Therefore, if the appointment to George Brown's children wholly fails, the power has not been well exercised at all, and the *whole fund* must go under George Brown's will as unappointed property.

*Secondly.* Upon this aspect of the case, Mrs. Whitridge, who would claim $100,000 under one provision of Mrs. Greenway's will, while claiming adversely to another provision of it, under George Brown's will, should be put to her *election.*

1. That, in cases of the exercise of special powers of appointment, where subjoined qualifying incidents or trusts, or succeeding limitations, which, if legally operative, would materially modify or diminish the estate of the first taker, cannot operate by reason of the rule against perpetuities, the Court will sustain the first taker's estate, as absolute, provided the words in which that first appointment is expressed, taken by themselves, are adequate to give such absolute interest, is a well established rule of testamentary construction. I *Jarman on Wills* (4 ed.), 295; *Lewis on Perpetuities,* 534–5; *Marsden*

*on Perpetuities and Accumulations*, 256, *et seq.; Gray on Perpetuities*, 426–442.

In the following cases the principle has been recognized and applied. *Kampf* v. *Jones*, 2 Keen, 756; *Carver* v. *Bowles*, 2 Russ. & My. 306; *Arnold* v. *Congreve*, 1 Russ. & My. 209; *Harvey* v. *Stracey*, 1 Drewry, 73, 139, 140; *Hardcastle* v. *Hardcastle*, 1 Hem. & Mill. 405; *Stephens* v. *Gadsden*, 20 Beav. 463; *Ring* v. *Hardwick*, 2 Beav. 352; *Churchill* v. *Churchill*, 5 Eq. 44; *Martin* v. *Martin*, 2 Eq. 404; *Courtier* v. *Oram*, 21 Beav. 91; *Gerard* v. *Butler*, 30 Beav. 541; *Cooke* v. *Cooke*, 38 Ch. Div. 202; *In re Hancock, Watson* v. *Watson* (1901), 1 Ch. D. 482; affirmed in House of Lords (1902), Appeal Cases, 14; *Sears* v. *Putnam*, 102 Mass. 5; *Slade* v. *Patten*, 68 Maine, 380.

In this State the question has not heretofore been the subject of adjudication, but the tendency of decision has been favorable to our contention. See *Dulany* v. *Middleton*, 72 Md. 67, 77, where the Court refers to *Ring* v. *Hardwick*, 2 Beav. 352, and 1 *Jarman on Wills; Ring* v. *Hardwick*, is stated in 1 *Jarman on Wills* (4 ed.), 296, 297, and more succinctly, in *Gray on Perpet.*, sec. 427, and is one of the line of authorities supporting the rule for which we are now contending. Of course, the words in which the gift to the first taker is expressed must be sufficient standing alone to give the absolute interest. In the present case the language of the gift in the first instance is clear and explicit, and amply sufficient for an absolute gift. This being so, the succeeding qualifying words, "the income only therefrom to be paid, etc., etc.," if void and inoperative, cannot cut down the prior good disposition.

In determining whether any given case falls within the rule that subsequent qualifications or limitations engrafted on an absolute gift which fail for remoteness, or any other reason, are to be rejected, leaving an absolute interest in the first taker, the reason of the rule must be considered. For the rule is founded on the principle that where the specific intention of a testator must be defeated on account of the rule against per-

petuities, or for some other reason, then if from the will the Court can see with reasonable certainty what disposition the testator would have made if the invalidity of his limitations in the precise manner and form in which he desired them to stand had been suggested to him, effect must be given to such alternative disposition. The Court cannot make a new will for a blundering testator, or speculate as to what he would wish to be done; but if the will itself shows what the testator wished to be done in the event of failure of certain limitations or provisions, then effect should be given to those wishes. *Humbertson* v. *Humbertson*, 1 P. Wms. 332; *Edgerly* v. *Barker*, 66 N. H. 434.

A well settled application of this same principle is, that where a bequest is made to unborn children without power of anticipation, the Court will reject the restraint on alienation as a perpetuity, but will sustain the gift as an unfettered bequest. In a case of this sort, where, under a power in a marriage settlement to appoint among the children of the marriage, the donee appointed equal shares to each of six children, but with the qualification subjoined that the shares of the daughters, who, of course, were unborn when the power was created, should be held in trust for them respectively for life without power of anticipation, after their deaths to go to their children as they should respectively appoint, and in default of appointment to their executors, the Court, proceeding upon the *cy-pres* principle rejected the restraint on alienation, and gave the daughters an absolute interest. LORD HATHERLY (then Sir W. Page Wood, V. C.) said : "And by analogy to this *cy-pres* doctrine, although the donee of the power cannot appoint to grandchildren, nor to persons unborn in the manner in which he has attempted to limit this property, yet the Court will so modify the limitation as to make it effective according to the power." *Fry* v. *Capper*, Kay, 163, 171.

In this connection, the language of a learned English Judge in a recent case is pertinent : "I agree, especially in the view that when it is possible so to construe a will as not to render a material part of it void by an application of the rule against

perpetuities, it is desirable to do so. Of course, as the Master of the Rolls has said, the Court has no right to misconstrue a will with that object, but, if the language is ambiguous, it is right to lean rather to a construction which will undoubtedly carry out the intention of the testator, in the sense that it will make his will effectual and not render it void by means of a doctrine from which, if he had known of it, he would certainly have desired to steer clear." *Turney* v. *Turney* (1899), 2 Ch. 739, 747.

2. The limitations of the *life estates*, at any rate, are valid, and are operative to the extent of those limitations. The first inquiry is *on what ground* are the life estates so appointed to Colegate N. Smith and her brothers and sisters to be regarded as void. Is it because of the admitted invalidity of the attempted limitations over to their descendants, or because of some supposed infirmity of the limitations of the life interests themselves? We must take for granted the latter, for it will hardly be contended that bad limitations upon top of good life estates are capable of invalidating the latter. (56 Md. 309, 310.) Then what is the quality of the life interests in question, and is there any principle of law to prevent their taking effect, except on the theory of our contention under the first point?

The will which creates the life estates does it by use of the following language: "I direct that the same (the residue, not previously allotted), be divided into eight equal parts, and that one-eighth part be allotted to each of the following named children of my said nephew George Brown, viz.: Colegate Smith, etc.; the income only therefrom to be paid respectively to each said child during her or his natural life with remainder over to her or his descendant, if only one, or descendants if more than one, in equal parts, in fee."

If this provision, that the income only is to be enjoyed by the appointees during their respective lives is a mere restrictive provision engrafted upon a valid absolute allotment and appointment (as claimed in our first point), then the restriction, together with the subsequently limited estate to their

descendants in remainder, falls wholly to the ground, and the absolute interests appointed in the first instance stand. But if that view is not accepted, and a *life estate* only is limited to each of the children of George Brown, the nephew, what principle of law or authoritative decision forbids that such limitation of a life estate vesting at the termination of Mrs. Greenway's life, and consequently within a life in being at the death of George Brown the testator, should be sustained?

"If a limitation be good within the rule against perpetuities, it matters not whether the estate given be a fee or absolute property, or any less or partial interest, as for life or otherwise." *Heald* v. *Heald*, 56 Md. 300. If it be contended by our opponents that the direction in Mrs. Greenway's will: "the income only therefrom to be paid respectively to each said child during her or his natural life," imports necessarily a hand to pay the income and therefore implies a trustee, the *Heald* will in the most explicit manner constituted a trustee, to whom the property was devised and whose duty it was made to hold and invest it.

The present case, like *Heald* v. *Heald*, 56 Md. 300, is clearly distinguishable from *Barnum* v. *Barnum*, 26 Md. 119; *Thomas* v. *Gregg*, 76 Md. 169, and *Missionary Society* v. *Humphreys*, 91 Md. 131, and other cases of that class, where trusts of an active character, whose performance was required to extend during a period of time exceeding the period allowed by the rule against perpetuities were held to be void.

When *Barnum* v. *Barnum*, is well understood the criticism to which the supposed doctrine of the decision has been sometimes subjected is seen to be quite unfounded. To take the simplest basis for the application of the doctrine of perpetuities, the limitation of legal estates in land, it was never denied, either in England or in Maryland, that if any estate, no matter what its own duration, whether in fee, for life or for a term of years, is capable of *vesting* within the period of time prescribed by the rule, the limitation will go into full effect and operation. The statement in the opinion of JUDGE ROBINSON in *Heald* v. *Heald*, 56 Md. 308, on this point, sup-

ported by references to Lewis and Jarman, is elementary.
Thus, if there be a devise or grant to A. for his life, remain-
der to B. for a term of 99 years, with remainder over, it is
clear that the limitation of the term is perfectly good, and
that irrespective of whether B. was in being or not at the time
of the testator's death, provided he be found in being at the
moment of the expiration of the prior life estate of A.   Now
if a testator make a similar disposition, but varying from it in
this, that instead of giving a 99 years term to B., he devises
the property to trustees for a term of 99 years in *trust* to ac-
cumulate the rents and profits during the term, the limitation
is clearly bad.   As shown by the authorities cited in *Marsden
on Perpetuities*, pages 156 and 314, a trust for accumulation
for a period beyond a life or lives in being and twenty-one
years is void irrespective of the invalidity of the after limita-
tion of the accumulated fund; the trust limitation is void *per
se*.   If the trust, instead of being for accumulation, requires
the trustee and his successors to hold and manage the prop-
erty, and to perform active duties with regard to it through-
out the term, making leases from time to time, collecting and
disposing of the rents according to the specific directions of
the testator throughout the ninety-nine years, keeping the
term inalienable during all that time, it could not be doubted,
we suppose, that such a trust would violate the rule against
perpetuities and be void altogether.   Yet such was in sub-
stance the devise of David Barnum, except that instead of di-
recting the trustees to hold the estate for 99 years, he directed
them to hold it and perform the trusts during a period of
time equally obnoxious to the rule against perpetuities, viz.,
"so long as my said children, or any children or descendants
of them or any of them, left by them, or any of them, at the
death of them, or any of them, shall live; it being understood
that any lease made during the period aforesaid shall have full
effect and continue for its stipulated term, notwithstanding the
cessation of all of said lives before the end of the term."   26
Md. 169, 170.

The Court was far from holding—no such question could

exist in the case—that equitable estates which, if legal estates, would be good, would not be good also.    No obstacle, therefore, was created by *Barnum* v. *Barnum*, or by any decision following *Barnum* v. *Barnum*, in the way of the limitation of mere equitable estates for life to persons not in being at the making of the will, to take effect, or vest, immediately upon the expiration of prior life estates limited to persons who were then in being.    *Heald* v. *Heald*, 56 Md. 300, for instance, was no new departure in Maryland, but merely the application of a general rule of executory limitation to a state of case to which the principle of *Barnum* v. *Barnum*, did not apply.

We have assumed for the sake of argument, that the life estates attempted to be limited to the children of George Brown, the younger, are *equitable*.    But it seems more correct to regard them as *legal.*    Mrs. Greenway makes no appointment of a trustee.    No where in her will does she either describe the interests given as equitable, or give any directions of any kind to any trustee.    At the outset, she declares her purpose to dispose of the two-fourteenths of the residue of her father, George Brown's estate.    Then, she provides that "*so much of the same* as shall amount to the cash sum of $100,000 be allotted to my niece Elizabeth Whitridge."    Next, that "*so much thereof* as shall amount to the cash sum of $42,000 be allotted to my grandniece, Isabella Brown Graham."    And so similarly, in respect to all the succeeding appointments down to and including the appointment in the fifth clause to the children of her nephew, George Brown, particularly in question under the present appeal.    There is nothing in the limitation itself which imports the constitution of a trust, or the giving of an equitable interest merely.    The eight named individuals, to whom the eight equal parts of the residue are allotted respectively, are to take them in this way, viz : "The income only therefrom to be paid respectively to each said child during his natural life," which means evidently that they are to enjoy all the income of their shares during their lives.    It is a familiar principle that ordinarily a gift of the income of the thing is equivalent to a gift of the thing

itself, to be possessed during the period for which the gift ex-
tends—for the term of a life, or other term, or absolutely, as
the case may be. *Ring* v. *Zimmerman*, 94 Md. 17; 1 *Jar-
man, 797; Mannox* v. *Greener*, L. R. 14 Eq. 456.

We think, therefore, the dispositions Mrs. Greenway under-
took to make were as follows:

(1.) An allotment of the eight equal parts of the residue
to the eight children of George Brown, one to each.

(2.) This general gift is qualified by cutting down the es-
tate of each such appointee to a life interest.

(3.) A limitation is made of the property at his or her death
to her or his descendant or descendants absolutely.

All these interests or estates we suppose to be *legal*, as
contradistinguished from equitable. But, as we have endeav-
ored to show, it will make no substantial difference if they are
held to be equitable estates.

3. Should the contentions, both under our first and second
points, fail to receive acceptance, should this Court be of opin-
ion that neither can the allotments to the eight children of
George Brown of Baltimore County, be sustained as absolute
appointments of the entire eight parts of the said residue, nor
can the life estates given to the said children respectively in
their respective parts be sustained, we respectfully submit that
the decree is still erroneous, and should be reversed.

(*a*) It is impossible to read Mrs. Greenway's will without
perceiving that she never intended to make *partial* appoint-
ments. She purposed a complete division of the entire two-
fourteenths which was held in trust for her benefit during her
life under her father's will, and by that will was made subject
her power of testamentary appointment.

If, after all the pains and forethought exercised by the tes-
tatrix, a construction is to prevail by which all the provision
made for the children of George Brown, and their descendants
to whom the residue, which, if the allotments of her will were
to stand, would constitute two-thirds of the estate, is to be
annihilated, and yet her allotments to Elizabeth Whitridge
and Harriet S. Brown and Bessie M. Brown are to be suffered

to stand, it is impossible to conceive of a conclusion which would be more contrary to the intention of a testator. If ever there was a case where the enormous injustice which would result from sustaining *some* of the allotments made of a fund, and defeating the rest, requires that a Court of equity should, as the only possible alternative, hold that it must be regarded as a case of a complete failure to exercise the power of appointment, and direct the whole estate to pass as unappointed, this is such a case.

*Myers* v. *Safe Deposit and Trust Co.*, 73 Md. 422, is a distinct authority for the rejection of all the appointments, when the evident intention is to appoint the *whole* estate.

(*b*) Upon the supposition that the appointment to the children of George Brown fail (together with the appointment to Isabella Brown Graham), and the appointment to Mrs. Whitridge must yet be sustained, the familiar equitable doctrine of election, must apply to the case, and Mrs. Whitridge be required to elect for the benefit of the disappointed beneficiaries of Mrs. Greenway between what she is so entitled to take under her will, and the interests which it is her legal right to claim in the property which Mrs. Greenway has vainly attempted to appoint and failed in doing. *Note to Noys* v. *Mordaunt*, and *Streatfield* v. *Streatfield*, 1 White & Tudor's Lead. Cases in Equity, 341, marginal; *Albert* v. *Albert*, 68 Md. 375.

The *dictum* of JAMES, V. C., in *Wollaston* v. *King*, L. R. 8 Eq. 165, has been recently overruled in *Bradshaw* v. *Bradshaw* (1902), 1 Chan. 436, 447, 448.

*Joseph C. France* (with whom were *George R. Willis* and *James McEvoy, Jr.*, on the brief), for Isabella B. Graham, appellant.

*First.* Mrs. Greenway's attempt to execute the power is wholly void and the whole settled estate should be divided equally, under the will of George Brown, *per stirpes*. (1.) It is conceded that under certain circumstances well appointed portions may stand, and such appointees may also take their shares of the unappointed part, if they belong to the class en-

titled in case of default. but it is also true that a Court of equity will not permit this result; where by so doing, it will frustrate the intention of either the donor or the donee of the power.    On this point the decision in *Myers* v. *Safe Deposit and Trust Company*, 73 Md. 413, is conclusive.

Mrs. Greenway intended Mrs. Whitridge to have one hundred thousand dollars of the settled estate and no more; and it would be manifestly unjust, not only to deprive Colegate Smith and her brothers and sisters of the portion appointed to them, but also to give Mrs. Whitridge, in addition to the one hundred thousand dollars she receives, a one-sixth share of the portions badly appointed.    (2.) Moreover, the manifest intent of the donor of the power was that in the absence of a *complete* appointment, the whole settled estate shall be divided equally.

There is clearly no room for the contention that the testator contemplated a partial execution of the power so conferred upon his daughter, Mrs. Greenway.    (3.) In any event the appointment to each of the daughters of Alexander Brown of ten thousand dollars of the settled estate, is void—being in excess of the power conferred upon Mrs. Greenway.    She is limited, by her father's will, to "such of my other children or their descendants or descendant as (she) may by her last will * * * appoint."    The father of these two appointees is living and they, consequently, are not descendants of George Brown, within the legal definition of that term.    The word descendant in legal definition, means the child or children of a deceased person who was the *stirps* or stock of descent. *Hillen* v. *Iselin*, 114 N. Y. 374.

*Second.* If the Court holds that the well appointed portions must stand, then Mrs. Whitridge should be required to elect between the one hundred thousand dollars appointed to her and the share she would take as heir at law in the portion of the settled estate that is badly appointed.    The principles governing the doctrine of implied or equitable election in this State were first laid down in the case of *McElfresh* v. *Schley*, 2 Gill, 181, where it was said :    "That no one shall be permitted

to take under an instrument and defeat the provisions ; or in the language of LORD ERSKINE, a person shall not claim an interest under an instrument, without giving full effect to that instrument as far as he can."

This rule has been followed in all subsequent cases before our Courts, and although in the case of *Tongue* v. *Nutwell*, 17 Md. 212, and *Barbour* v. *Mitchell*, 40 Md. 151, it was held that no election would be required where a devise was avoided by the policy of the law, such as a violation of the rule against perpetuities, the latter case of *Albert* v. *Albert*, 68 Md. 352, expressly decides that even in such a case, the doctrine of election applies.   It is assumed, therefore, whatever the rule may be elsewhere, that in this State the person cannot hold the benefit under an instrument and at the same time repudiate some of its provisions; and that in such a case he will be put to his election and required to take either under or against the instrument.   In *Albert* v. *Albert*, *supra*, the donee of the power mingled the settled and the absolute property and attempted to create estates which, *quoad* the settled property, were void for remoteness.   See also *Latrobe* v. *Carter*, 83 Md. 279.

It is finally respectfully submitted that in the case at bar the most complete justice will be done by treating the entire execution of the power as void under the ruling in *Myers* v. *Safe Deposit and Trust Company*, *supra*.   If, however, this Court shall feel bound to uphold the well appointed portions and allow Mrs. Whitridge to retain the one hundred thousand dollars appointed to her then she should be deprived of any share in the defectively appointed portions of the settled estate and the appellant, Isabella B. Graham, should take an entire third interest therein, because, Mrs. Whitridge being excluded, she is the only representative of Isabella Graham, the daughter of George Brown.

*Arthur Geo. Brown* and *R. E. Lee Marshall*, for the Trustees, appellees.

1. Although formally denied in the answer of George

Brown's children, no serious contention was made in argument as to the application of the rule against perpetuities to the second and fifth clauses of the will. The rule itself is well settled in this State. *Barnum* v. *Baruum,* 26 Md. 171; *Goldsborough* v. *Martin,* 41 Md. 501; *Albert* v. *Albert,* 68 Md. 352; *Thomas* v. *Gregg,* 76 Md. 169.

It is equally well settled that, in applying this rule, the validity of appointments made. under a power created by will, is to be tested by reading them as if written in and forming part of the will creating the power. *Albert* v. *Albert,* 372; *Thomas* v. *Gregg,* 174.

If, then, Mrs. Greenway's appointments to these persons, as set out in clauses 2 and 5 of her will, be read into the will of the. testator, George Brown, as if written in and forming a part of the same, it is clear that the estates attempted to be limited thereby, extend beyond a life or lives in being at the time of the death of the testator and twenty-one years and the prescribed fraction thereafter, and are, therefore, void under the rule against perpetuities above referred to.

　2. *The failure of the appointments in the second and fifth clauses of the will does not affect the validity of the appointments, good on their face, in the first and third clauses of the will.*

The question is whether a portion of the appointments being good and a portion bad, as exceeding the boundary of perpetuity, the failure of the badly appointed portions, constitutes an entire failure to execute the power of appointment whereby all the appointments attempted to be made thereunder fail, and the entire estate devolves as unappointed.

The general rule in such case is laid down in *Lewis on Perpetuities,* 494. "If the portion of the appointment which exceeds the boundary of perpetuities be definite and ascertained, or can be rendered so, and can be separated from that in respect of which there is no excess, then, it would seem, those objects of the power in whose favor there is a valid appointment, may take the shares or interests destined for them, and the residue of the property subject to the power, will devolve

as unappointed; in other words, the appointment will be good *pro tanto.*"  See also, 2 *Sugden on Powers,* 202, where the same principle is laid down.

The precise question was before this Court in the *Albert's case,* cited *supra;* and the rule above stated was adopted and applied.

In the *Myers case,* 73 Md. 314, the invalidity of the appointments arose out of the failure of the donee to conform to the terms of the power vested in her by the will of her testator, whereby she was held to have *violated the intentions of her testator* with respect to the subject-matter of the power. But such a case is very different from a case where the donee acts strictly within the terms of the power, but in so doing, *violates a rule of law.*

The one case is governed by rules of construction ascertaining the intentions of the owner of the property with regard to the extent of the power conferred by him, the other depends upon the legal consequences resulting from a conflict with a rule of law, in the exercise of a power, in strict conformity with the intentions of the donor.

That the *Myers case* turned solely upon the construction of the nature and extent of the donee's power, as gathered from the intention of her testator creating it, clearly appears from the language of the Court distinguishing that case from the case of *Torrance* v. *Torrance,* 4 Md. 11.

In the present case, the settled property and the individual property of Mrs. Greenway have been carefully and sedulously kept separate.  The will is divided into two items; the first dealing solely with the settled property and the second, solely with the individual property.

To all intents and purposes, it is as though there were two instruments, one devoted exclusively to the execution of the power, and the other exclusively to the disposition of the individual estate.

Under these circumstances, it is submitted, this case does not call for election, but falls within the principles laid down in *Tongue* v. *Nutwell,* 17 Md. 212, where it was held that,

where a devise of land is void *by operation of law,* an heir at law is not estopped from claiming his interest in the land so devised by the fact that he took other devises and bequests under the will; that the doctrine of election does not apply in such a case, for, by taking such other devises and bequests, he manifests no intention to defeat any provision of the will, nor to make an election.

The policy of the law in such case is clearly pointed out in *Barbour* v. *Mitchell,* 40 Md. 151, where the Court reviewing *Tongue* v. *Nutwell,* said, "the devise, in the *Barbour case,* was avoided by the policy of the law. To give effect by election to a will whose provisions countenance the policy of the law, would be preferring private interests to the public good." The views of these appellees on this subject are so clearly expressed in the opinion of His Honor, JUDGE BAER, that further discussion is deemed unnecessary.

2. It was admitted below, that the advice of counsel to trustees was correct and that "next of kindred" meant the nearest blood relations of Mrs. Greenway and that Mrs. Elizabeth G. Whitridge, and Alexander Brown, the niece and nephew of Mrs. Greenway, were, as such, entitled to the trust estate held by the trustees, appellees, under the will of Mrs. Grace Brown.

In support of this position the trustees relied:

1. Upon the actual and primary meaning of the term, signifying that one, or more, who stands in the nearest degree of blood relationship to the deceased. *Century Dictionary,* vol. 3, p. 3286.

2. Upon the judicial interpretation and construction placed upon the term, confining it to those nearest in blood relationship, to the exclusion of those more remote. "When a devise or bequest is made to the next of kin without reference to the Statute of Distributions, only those persons take who strictly answer this description. Thus where a gift is made to A. and at his decease, to his next of kin and A. dies leaving a brother and the children of a deceased brother, the brother takes to the exclusion of the deceased brother." 16 *Am. &*

*Eng. Ency. of Law,* 1 ed. 706; 2 *Jarman on Wills,* Perkins ed. marg., 38; *Elmesley* v. *Young,* 2 Myl. & Keen. 82; *Wimble* v. *Pitcher,* 12 Vesey, 433; *David* v. *Waters,* 11 Ore. 448·

3. Even if it be held that the term "next of kindred" should be construed by reference to the Statute of Distributions, the nephew and niece would take to the exclusion of the grandnephews and grandnieces. *McComas* v. *Amos,* 29 Md. 120; *Garrison* v. *Hill,* 81 Md. 211.

*J. J. Alexander,* for Mrs. E. G. Whitridge, appellee.

1. The appointments to Miss Isabella B. Graham and the eight children of the younger Brown are invalid, as being attempts to create perpetuities. This was really admitted in the argument below, but inasmuch as none of the appointees were alive at the time of the creation of the power, the case of *Albert* v. *Albert,* 68 Md. 362, is, I submit, a clear authority that these appointments are void for the reason stated.

2. It is insisted that Mrs. Whitridge is well entitled to her gift of $100,000, and also to her share of the ill-appointed residue, and that the power being in part ill-executed, is not to be considered as not executed at all and void. *Albert* v. *Albert,* 68 Md. 362; *Bristow* v. *Ward,* 2 Ves. Sen. 640; *Sadler* v. *Pratt,* 5 Sim. 632; 2 *Sugden on Powers,* 202; *In re Fowler's Trusts,* 27 Beav. 362.

3. We insist that no case of election is raised against Mrs. Whitridge. The doctrine is fully explained in the notes to *Noys* v. *Mordaunt,* in the first volume of White & Tudor's Leading Cases in Equity, and particularly in the judgment of LORD LOUGHBOROUGH in *Bristow* v. *Ward,* 2 Ves. 640, cited above. In that case the donee of the power, in his will, dealt exclusively with the settled estate over which he had the power and did not dispose of any estate of his own. And the LORD CHANCELLOR pointed out that there could be no case of election because there was "no free disposable property" of the donee of the power as to which an election could be had. Now in our case it was stated before the Court below, by the appellants, that the will of Mrs. Greenway was to be treated

as two distinct documents—one dealing with the fund over which she had the power and the other dealing entirely with her individual estate, and upon this hypothesis, obviously, there is "no free disposable property of Mrs. Greenway" involved. If the appellants had claimed that Mrs. Whitridge was bound to elect between the appointment to her and her right to the ill-appointed residue and her legacy of $15,000 out of Mrs. Greenway's individual property they would have admitted that her rights to the trust fund were incontestable.

But election is only a rule of practice in equity, not a rule of positive law. Therefore, the party desiring election must set up an equitable claim. Now, Miss Isabella Graham, in fact, profits by the ill-appointment to her. On what ground can she claim against Mrs. Whitridge the benefit of election? She cannot approbate and reprobate. So the children of George Brown, the younger, would be bound to compensate Mrs. Whitridge out of their interests in Mrs. Greenway's individual estate for what she would lose in case they would contend she was not entitled to what the will of the elder Brown expressly gives her, in case of a defective appointment of the trust fund.

4. But it is insisted on behalf of Mrs. Whitridge that the invalid appointments failing because they were against the policy of the law, the Court will not permit a question of election to be raised. This is decided in *Tongue's Lessee* v. *Nutwell*, 17 Md. 212.

In *Barbour, etc.*, v. *Mitchell*, 40 Md. 151, this case was commented on by this Court, and they say, distinguishing it from *McElfresh* v. *Schley*, 2 Gill, 181, and the case at bar: "In *Tongue* v. *Nutwell*, the devise was avoided by the policy of the law; to give effect by election to a will whose provisions contravened the policy of the law, would be preferring private interests to the public good."

This again is decided in *Wollaston* v. *King*, L. R. 8 Eq. 165, which was confirmed by LORD SELBORNE. There the Vice-Chancellor says : "It is also material that the reason why the gift fails is that there was an attempt to create a power in violation of the rules of law. I apprehend it is not

for this Court to aid such an attempt, either by the applica-
tion of the doctrine of election or otherwise."

McSHERRY, C. J., delivered the opinion of the Court.

These proceedings were commenced in Circuit Court No. 2
of Baltimore City by trustees under the will of the late George
Brown.   Upon the death of Mrs. Grace Ann Greenway, a
daughter of the testator, the trustees who held for her life the
fund which will be hereinafter more particularly mentioned,
being in doubt as to the true construction of her will, which
purported to execute a power of appointment over that fund,
filed a bill in equity which is now before us, and brought into
Court all the parties beneficially interested under the will of
George Brown, the will of Mrs. Greenway and under an earlier
will of Mrs. Grace Brown, the mother of Mrs. Greenway.   The
defendants were all summoned, testimony was taken to prove
the pedigree and relationship of the parties, and the questions
which we shall presently state and consider, were passed on
by the Circuit Court.    From the decree there entered, the im-
port of which will appear later on, the pending appeal has
been taken.

On the 15th day of January, in the year 1859, George
Brown, the elder, executed his last will and testament.    He
died on the 26th day of August, in the same year.    His will,
which is very voluminous, covering over twenty-one pages of
the printed record, disposed of a large and valuable estate.
By the sixth article of that will, after having made elaborate
provisions for the payment of the income of two-fourteenths of
his residuary estate to his daughter, Mrs. Grace Ann Green-
way during her life, and after having provided for the contin-
gency of her having issue living at her death, the testator pro-
ceeded to deal with the alternative contingency of her dying
without leaving issue.    That is the contingency which actually
happened and the following clause is the one which relates
thereto.   "Secondly, in case my said daughter, Grace Ann,
shall not leave living at her death, any child, nor any descend-
ant of any child of hers, then and in that case the said trustees

·and their successors shall continue to hold the said last mentioned two-fourteenths parts or shares, of said rest, residue and remainder of my estate, as aforesaid, and shall also have and hold all the rents, income and profits, thereafter arising, or to arise in any manner from the same, and from any, and every investment of the same, or any part thereof, made, or to be made in trust, for the following uses and purposes, that is to say, to, and for such of my other children, or their descendants or descendant, and in such proportions, and for such estate and estates therein, either in fee, or for a less estate, and with such limitations and conditions, as my said daughter Grace Ann may by her last will and testament, or by any instrument of writing, in the nature of a last will and testament (notwithstanding any coverture she may be under) executed in the presence of three or more witnesses, name, limit and appoint, to take the same; and thirdly, in case of my daughter Grace Ann, shall die without having executed, under and in · pursuance of the power above given to her, any such will, or instrument in writing in the nature of a will, limiting and appointing the said two-fourteenths parts or shares, in manner aforesaid, then in default of such limitation and appointment, by my said daughter, Grace Ann, and in the event also of her dying without leaving any child or any descendant of any child of hers, living at the time of her death as aforesaid, it is my will and I so declare and direct, that from and immediately after the decease of my said daughter, Grace Ann, the said trustees and their successors shall have and hold the said last mentioned two-fourteenths parts or shares of said rest, residue and remainder of my estate as aforesaid, devised as aforesaid in trust in the first instance for the use of my said daughter, Grace Ann, during her life, as aforesaid, to and for all of my other children then living, and all the descendants or descendant then living, of such of them, as is now dead, or may be then dead, their heirs, executors, administrators and assigns, if but one, to take all, and if more than one, to be equally divided between them, *per stirpes* and not *per capita*, and my meaning is, in this devise or limitation over as afore-

said, to my other children and their descendants as aforesaid, to include all the descendants of my deceased daughter, Isabella. The descendant or descendants of my children, Alexander D., George S., and Isabella, to take also, *per stirpes* and not *per capita*, and in equal degree, to take equally." ·

Mrs. Grace Ann Greenway died on the ninth of September, 1903, without having had any child or children, and her husband pre-deceased her. By her last will and testament dated the 29th of April, 1899, and duly admitted to probate in the Orphans' Court of Baltimore City, amongst others, the dispositions which will be presently mentioned were made. She divided her will into two parts. Under the first sub-division, she undertook to execute the above power of appointment contained in the will of her father. Under the second sub-division, she disposed of what she denominated her individual property. The execution of the power of appointment above alluded to is as follows : *First,* so much of the two-fourteenths part of the rest and residue of the estate of her father, over which she was given the power of appointment, as amounted to the cash sum of one hundred thousand dollars she allotted to her niece, Elizabeth Whitridge, absolutely. She declared that if Mrs. Whitridge should be dead at the time of the decease of the testatrix, the above mentioned sum of one hundred thousand dollars should go to the descendant or descendants of Mrs. Whitridge in equal parts in fee; but should Mrs. Whitridge be dead and not leave any descendant or descendants living at the time of Mrs. Greenway's death then the said sum of one hundred thousand dollars was to be considered a part of the rest and residue of the said two-fourteenths and was to be disposed of as later on provided. Mrs. Greenway's will next declared, that so much of the aforementioned two-fourteenths as should amount to the cash sum of forty-two thousand dollars she allotted to her grand niece, Isabella Brown Graham, daughter of the testatrix's deceased nephew, George Brown Graham, "*the income therefrom only to be paid to her during her natural life*" with remainder over to her descendant or descendants in equal parts, *in fee*. The next

clause of Mrs. Greenway's will provided that so much of the aforementioned two-fourteenths as should amount to the sum of twenty thousand dollars she allotted to her grandnieces, Harriet S. Brown and Elizabeth Brown, daughters of her nephew, Alexander Brown, in equal parts in fee if both were living at the time of the testatrix's death, or the whole to the survivor, if only one was then living. If both should be dead at the time of the testatrix's death, the twenty thousand dollars so allotted to the above named grandnieces, she allotted to their father, Alexander Brown, if he then were living, in fee; otherwise it was to be considered part of the rest and residue of the said two-fourteenths and was disposed of as later on indicated. Then came a provision for the benefit of the testatrix's nephew, George Brown, son of Alexander D. Brown, who was the brother of the testatrix, but as George Brown died in the lifetime of the testatrix, this provision did not take effect because it was expressly declared that the said sum of twenty thousand dollars should in that event form part of the rest and residue of the two-fourteenths. Then followed the fifth clause, which, as it, together with the second clause, forms the main ground of contention in the present controversy, will now be transcribed in full.

"*Fifth.* As to the rest and residue of that portion of the estate so as aforesaid specified in my father's said will, not hereinbefore disposed of by me, together with any addition thereto that may accrue by the happening of any of the contingencies heretofore specified, I direct that the same be divided into eight equal parts, and that one-eighth part be *allotted to each* of the following named children of my said nephew, George Brown, viz. : Colegate Smith, Isabella Merryman, Fannie W. Keith, Sarah Brown, Grace Greenway Brown, Carroll Brown, George Brown and Irwin Brown; the *income only therefrom to be paid respectively to each said child during her or his natural life, with remainder over to her or his descendant if only one, or descendants if more than one, in equal parts, in fee.* Should any of the aforesaid children of my nephew, George Brown, have died before me, leaving a descendant or descendants liv-

ing at the time of my death, I desire such descendant or descendants to have the one-eighth part that its or their parent would have taken if then living, if only one descendant, the whole, or if more than one, equal portions, in fee, otherwise I direct that such one-eighth portion be equally divided and added, subject to the same estate therein, to the remaining respective shares of the other then surviving said children of George Brown and the descendant or descendants of any then deceased such child, such last named descendant taking the whole or such last named descendants taking in equal parts the share its or their parent would have taken, if then living."

There are no italics in the will ; we have used them merely for emphasis. Under this fifth clause the sum of three hundred and thirty-eight thousand dollars was disposed of. All of the beneficiaries of this settled estate who are designated in the will of Mrs. Greenway, are related in the following manner to George Brown, the elder, who was the donor of the power of appointment; Harriet S. and Bessie M. Brown, the daughters of Alexander Brown, are the great granddaughters of the donor of the power and were not *in esse* at the time of his decease. Colegate N. Smith and the seven other children of George Brown, the younger, are the great grandchildren of the donor of the power and were not *in esse* at the time of his decease as is shown by the fact, stated in the record, that their father was not married until the year 1866. Isabella B. Graham is also a great granddaughter of the donor of the power and being an infant under twenty-one years of age was not *in esse* at the time of his decease. Elizabeth Whitridge, to whom the one hundred thousand dollars of the settled property was allotted by the will of Mrs. Greenway, is a granddaughter of the donor of the power.

The question which this state of facts presents and which we are therefore called on to decide is this, namely : Is the will of Mrs. Greenway a valid execution of the power of appointment contained in the will of her father, George Brown ? The solution of that question involves the propounding of, and the answer to, three other inquiries and the final disposition of

the controversy depends upon these three inquiries and a fourth which will be stated later on. In addition to these there is a. fifth subject which will be dealt with last. These three inquiries are : *First*, are the limitations over to the descendants of Isabella Brown Graham, a great granddaughter of the donor of the power, as made in the second clause of Mrs. Greenway's will ; and are the limitations over to the descendants of Colegate N. Smith and the seven other great grandchildren of the donor of the power, as made in the fifth clause of Mrs. Greenway's will, void for remoteness under the rule against perpetuities ? *Second*, if these ultimate remainders are void for remoteness, are the intervening life estates created by the second and fifth clauses of Mrs. Greenway's will in the settled property, valid ? *Third*, if the limitations over beyond the life estates in these two clauses are void for remoteness where and in what proportions do the badly appointed remainders go; and by virtue of what instrument do they pass to the per-. sons who will finally receive them ?

What is an estate in perpetuity ? Considerable confusion in adjudged cases has doubtless arisen from an inability to define with precision what a perpetuity is. Perhaps a strictly accurate definition has never been given. In an early case, *Scatterwood* v. *Edge*, 1 Salk. 229, it was defined to be an estate inalienable, though all mankind join in the conveyance ; but this is obviously not correct. It was said by CHIEF JUSTICE GIBSON in *Hillyard* v. *Miller*, 10 Pa. St. 334, that a perfect definition of a perpetuity has not been given and the nearest approach to it is found in *Lewis on Perpetuities*. The definition there given is in these words : "A future limitation whether executory or by way of remainder and of either real or personal property, which is not to vest until after the expiration of, or will not necessarily vest within, the period fixed and prescribed by law for the creation of future estates and interests, and which is not destructible by the person for the time being entitled to the property subject to the future limitation except with the concurrence of the individual interested under that limitation." The perion fixed and prescribed by

law for the future vesting of an estate or interest, is a life or lives in being at the time of its commencement and twenty-one years and a fraction of a year beyond to cover the period of gestation; and where property is rendered inalienable or its vesting is deferred for a longer period, the law denounces the devise, the bequest or the grant as a perpetuity and declares it void. *Albert* v. *Albert*, 68 Md. 372; *Goldsborough* v. *Martin*, 41 Md. 501; *Barnum* v. *Barnum*, 26 Md. 171. This rule against perpetuities is a rule of law and not one of interpretation. In determining the validity of testamentary dispositions the objects of the testator's bounty are first to be ascertained without reference to the rule. The instrument is to be interpreted in precisely the same manner as if there was no rule against perpetuities and as if the intention expressed by the words may lawfully be carried out. Having thus, apart from any consideration of the validity of this intention, arrived at the true construction of the will, the rule against perpetuities should then be applied to the objects so ascertained. *Peaks* v. *Moxeley*, 5 App. Ca. 714; *In re Mervin* (1901), 3 Ch. 200. The rule against perpetuities is the same at law as in equity.

To test the validity of the appointments made by Mrs. Greenway under the power contained in the will of George Brown, it is necessary to read the gifts made by her will, as if they had been written into and formed part of the will of George Brown, in the place of the power itself therein contained. *Albert* v. *Albert*, 68 Md. 372. If the contingency upon the happening of which the remainders over to the descendants of Isabella B. Graham, Colegate N. Smith and the seven other great grandchildren of George Brown are to vest, is one that *might* or *might not* happen during a life or lives in being at the time of the death of George Brown and twenty-one years and a fraction of a year in addition, then the contingency is too remote and the remainders fail to take effect. In determining this question of remoteness, it is an invariable principle that regard is to be had to *possible* and not merely to *actual* events. It is not determined by looking *back* on events which have occurred and seeing whether the estate *has* ex-

tended beyond the prescribed limit, but by looking forward from the time the limitation was made and seeing whether, according to its terms, there was then a possibility that it *might* so extend. 22 *Am. & Eng. Ency.*, 2 ed. 707. The event upon the happening of which the remainder is to vest must be one that is *certain* to happen within the prescribed period or the limitation will be bad. This is true of contingent remainders, precisely as it is of executory devises; and as respects executory devises the doctrine has been clearly stated by this Court in *Biscoe* v. *Biscoe*, 6 G. & J. 235.

Tested by these principles, there is no difficulty in determining that the remainders to the descendants of Isabella B. Graham, under the second clause of Mrs. Greenway's will and to the descendants of Colegate N. Smith and the other seven children of George Brown, the second, under the fifth clause of Mrs. Greenway's will, are void. As none of those nine great grandchildren was in being when George Brown, the elder, died and as it is possible that more than twenty-one years and the fraction of a year allowed for the period of gestation, may expire since the death of Mrs. Greenway before the termination of the life estates given to those great grandchildren in the second and fifth clauses of the will of Mrs. Greenway, and, therefore before the remainders created by those clauses could vest in the descendants of the great grandchildren therein named, that bare possibility, of itself, defeats the remainders over and renders them void as being in conflict with the rule against perpetuities; unless the doctrines and distinction which will be later on considered, and which were contended for with so much zeal by the counsel for the appellants, can prevail.

This brings us to the proposition that the allotments made in the second and fifth clauses of Mrs. Greenway's will were not allotments of life estates with remainders over, but were allotments of absolute estates; and are to be treated as the latter because the limitations in remainder being void are to be dealt with as if there had been no attempt to create them at all. It is true that where an absolute estate has been clearly

given and subsequent repugnant limitations cutting it down to
a life estate have been added and where the super-added limi-
tations are void for remoteness, the ultimate limitations will
be disregarded and the absolute estate will be upheld.    This
doctrine is concisely stated in 1 *Jarman on Wills*, 295, in the
following words : "But though the Courts will not violate
the established rules of construction for the sake of bringing
a gift within legal limits yet an anxiety to prevent the testa-
tor's disposition scheme from proving abortive on account of
its remoteness is plainly discoverable throughout the cases.
To this anxiety we may ascribe the rule which recent cases
seem to establish, that where a testator has by his will made
an absolute bequest in favor of unborn persons, and has after-
wards by a codicil revoked such bequest, and in lieu thereof
given to the same legatees, life interests only, with remainder
to their children (which subsequent bequest of course would
be void as to the children) the codicil may be rejected, and the
legatees take the interest originally given them by the
will.    And this rejection of disqualifying clauses, in-
effectually attempted to be engrafted on a previous ab-
solute gift, equally obtains where the whole is con-
tained in the same testamentary paper, and in spite, too, of
the principle hereafter discussed, which prefers the posterior
of two inconsistent clauses; it being considered (for this is the
ground upon which alone the construction can be defended),
that the testator intends the prior absolute gift to prevail, ex-
cept so far only as it is effectually superseded by the subse-
quent qualified one." This rule is recognized in the case of
*Dulany* v. *Middleton*, 72 Md. 67, where the passage we have
just quoted from Jarman is referred to. There are numerous
other cases which support this proposition and its correctness
cannot be questioned. But the difficulty encountered in its
application to the case before us lies in this, that the will of
Mrs. Greenway does not create in the first instance an abso-
lute estate in these great grandchildren, but in terms gives
them merely a life estate. If the estate given them in the
first instance had been an absolute one, the subsequent en-

grafting upon it of a limitation which is repugnant to the rule
against perpetuities would not cut that absolute estate down,
because the engrafting limitation would be rejected as abor-
tive and the absolute estate would remain.   The will allots to
each of the children of George Brown, who was Mrs. Green-
way's nephew, and to Isabella Brown Graham, merely life
estates; for in each instance both the second and fifth clauses
specifically declare that the income only arising from the ap-
pointed shares shall be paid to the named legatee *during his
or her natural life* and the same sentence concludes with these
words, namely, "with remainder over to her or his descendant
if only one, or descendants, if more than one, in equal parts,
*in fee.*"   To raise these thus plainly created life estates to ab-
solute estates, all of the words vesting, or rather, attempting
to vest the remainders *in fee* in the descendants, must be re-
jected; and rejecting those words would contravene the set-
tled principle that the will must be construed regardless of
the rule against perpetuities to ascertain the intention of the
testator and then, when that intention has been ascertained, the
rule must be applied.   The rule against perpetuities like the
rule in *Shelley's case* always defeats the testamentary inten-
tion.   When it is obvious on the face of the will that the in-
tention was to give but a life estate, Courts cannot, by reject-
ing the subsequent invalid limitations, change that life estate,
into an absolute estate; but they may, as we have already
said, where the first gift is of an absolute estate, strike
down subsequent repugnant limitations that are void be-
cause contrary to the rule against perpetuities.   Inasmuch,
then, as it is clear on the face of Mrs. Greenway's will that
she gave, and intended to give, under the second and fifth
clauses, to the great grandchildren of the donor of the power
merely a life estate in the allotted portions by those clauses
disposed of, it will be impossible to apply the rule to which
Jarman alludes and which was adverted to in *Dulany* v. *Mid-
dleton*, and, therefore, impossible to convert the distinct life
estates into absolute estates.

This case is clearly distinguishable from *Myers* v. *The Safe*

*Deposit Co.*, 73 Md. 413.   Upon the assumption that the limitations in remainder under the second and fifth clauses of Mrs. Greenway's will, are void for remoteness, it is contended that there has been a partial failure to execute the power of appointment with which she was clothed by her father's will; and that, as it was the evident design of the donor that the whole of the two-fourteenths subjected to the power, should be appointed by Mrs. Greenway, the failure on her part to make a complete and effective appointment of the whole of the settled property, must be treated as a failure to make any appointment at all; and therefore, that the appointments which confessedly are well made must be stricken down and the entire two-fourteenths must pass under the limitations contained in the will of George Brown, the donor of the power, just as if no appointment of any kind had been made by Mrs. Greenway.   In support of this contention the case of *Myers* v. *The Safe Deposit Co.*, is relied on.   But that case and this are governed by different principles.   In the *Myers case*, the testator, after giving his wife the residuum of his estate for life, provided that "immediately from and after the death of my wife then my will is and I so order and direct that the residuum of my estate and property   *   *   *   *   shall pass to and become the estate and property of such of my children and grandchildren or either as she by her last will and testament, which she is declared competent and is hereby authorized and empowered to make and execute, whether she be sole or covert, shall have named and appointed to take and have the same, and in default of such nomination and appointment by my wife, then my will is that the same shall pass to my children and descendants in the same manner as if I had died intestate."   In execution of that restricted, qualified power of appointment, Mrs. Myers, after blending her own with her husband's estates divided the whole into three equal parts ; two of which she subsequently sub-divided, each into three equal parts.   One-third of the whole blended estate she gave absolutely to one of her sons.   One-third of one of the other three equal parts, or one-ninth of the whole,

she gave absolutely to a grandson. The remaining one-third and two-thirds of one-third, being five-ninths, she gave to the Safe Deposit and Trust Company in trust for certain beneficiaries for life with remainders over. And this was decided not to be warranted by the power of appointment which she possessed. The question was whether the remainders which were badly appointed because made in excess of the power, would vitiate the appointments which were well made, and it was held that the testator designed that whoever of his children or grandchildren the wife nominated to take, was entitled, under the terms of the power, to take an absolute estate in the personalty and a fee in the realty and not a mere life estate in the one and a limited interest in the other. "He gives the wife, the simple power to name who shall take the estate," said this Court, "and she is given no power by implication to create a trust and name a stranger to take the title and hold in trust for the beneficiary she shall name. The whole estate on the determination of the life estate vested by the will of Charles Myers in his children and grandchildren as remaindermen subject only to the power of distribution or nomination by the wife or designation by her of the persons of that class who should have the estate. The wife therefore only had a special power. If she failed to exercise it the estate was to pass absolutely in fee to the testator's descendants, which reflects additional light as to the kind of estate which the power was to operate upon in the way of designating the taker thereof. *Wickersham* v. *Savage*, 58 Pa. St. 365. Mrs. Myers took a particular power under her husband's will, limited in character and not a general power." In the course of the opinion the rule was recognized as laid down in *Sugden on Powers*, vol. 2, p. 102, to the effect that the well appointed portions will stand and the appointees of such well appointed portions will not be excluded from shares of the unappointed part if they belong to the class which takes; but it was observed that a careful examination of the cases on which Mr. Sugden rests this statement of the law did not conclusively settle a case like that of *Myers* v. *The Safe Deposit*

*Co.* Mrs. Myers had merely the power to designate the persons to take; she had no power to determine what quality of estates they should take. The power was a power to appoint the *whole* estate and to appoint an *absolute* estate. In a word, the power was single and indivisible and ·incapable of partial performance. The failure to appoint the *whole* estate was a failure to execute the power and the invalidity of the appointments was due to an omission on the part of the donee to follow and obey the terms of the power vested in her; and this omission was treated as a violation of the intentions of the donor of the power with respect to the subject-matter of the power. As a consequence the entire attempted execution of the power was stricken down. In the case at bar, however, Mrs. Greenway, the donee of the power, acted literally within the terms of the power, but violated the rule of law prohibiting the creation of a perpetuity. There is a distinction between the repudiation of a power as in the *Myers case*, and the exercise of it, as in this case, though in the exercise of it the limit as respects remoteness in vesting is inadvertently overstepped.

Secondly, the limitations in remainder attempted to be created by the second and fifth clauses of Mrs. Greenway's will being void for remoteness, are the intervening life estates given by those same two clauses valid ? Where an interest or estate is given by deed or will with a limitation over on a specified contingency, such limitation, if it violates the rule against perpetuities, is for the purpose of determining the effect on the prior disposition of the property, to be considered as stricken out, leaving the prior disposition to operate as if a limitation over had never been made. *Goodier* v. *Johnson*, 18 Ch. D. 441; *Coutier* v. *Oram*, 21 Beav. 91; *Taylor* v. *Forbisher*, 5 DeG. and Sm. 191; *Goldsboro* v. *Martin*, 41 Md. 48; *Heald* v. *Heald*, 56 Md. 300; *Lawrence's Appeal*, 136 Pa. St. 354; *De-Ford's case*, 36 Md. 168. Each of the life tenants named in the second and fifth clauses of Mrs. Greenway's will was a person in being at the time of Mrs. Greenway's death, and Mrs. Greenway herself being a life in being at the time of her

father's death, the life estates were bound to vest within the period of a life in being and twenty-one years beyond.    If we read into the will of George Brown, the donor, the dispositions made in the second and fifth clauses of Mrs. Greenway's will, it is perceived at once that though the beneficiaries of the life estates were not *in esse* at the time of the donor's decease, the life estates created for them by Mrs. Greenway are precisely such as would have been created had the donor, instead of giving Mrs. Greenway the power of appointment, inserted in its place a bequest of life estates to his great grandchildren without naming them but describing them as the grandchildren of his son, Alexander D. Brown, and his daughter, Isabella Graham, living at the time of the death of the donee of the power.    Read in that way there can be no question that the life estates do not violate the rule against perpetuities, because instantly upon the death of Mrs. Greenway they vested in these great grandchildren who were then all in being. These life estates are not estates given to a class some of whom may take and some of whom may not.    They are given to persons capable of taking, and having vested within the time allowed by the rule against perpetuities, they cannot be divested by abortive efforts to engraft upon them, limitation over, which by reason of the rule against perpetuities must fail to take effect.    We therefore hold that the life estates given in the second and fifth clauses of Mrs. Greenway's will are valid.

Thirdly, what disposition must be made of the void estates in remainder which the second and fifth clauses attempted but failed to create?    The clause we have quoted from the will of George Brown, the elder, answers that inquiry, for it declares that in the event of the death of his daughter, Mrs. Greenway, without executing the power of appointment and without leaving children, the settled property should pass to all the children of the testator then living and all the decendants or decendant then living of such of them as might be then dead, and he added, "my meaning is in this devise or limitation over as aforesaid to my other children and their descendants as aforesaid, to

include all the descendants of my deceased daughter, Isabella. The descendant or descendants of my children Alexander D., George S., and Isabella to take also *per stirpes* and not *per capita* and in equal degree to take equally." The unappointed portion, therefore, of the two-fourteenths subject to the said power of appointment, must be disposed of as directed in the clause just indicated, und unless there is some other circumstance intervening to produce a different result the whole unappointed portion of the settled property would vest *per stirpes* in the descendants of George S. Brown, deceased, Alexander D. Brown, deceased, and Isabella Graham, deceased. As a consequence one-third of the badly appointed property, subject to the life estates which we have held to be valid, vests in Alexander Brown, the son of George S. Brown, and grandson of the donor of the power; one-third, subject to the life estates, vests in the grandchildren of Alexander D. Brown; one-sixth, subject to the life estates, vests in Mrs. Whitridge, the daughter, and one-sixth, subject to the life estates, vests in Isabella B. Graham, the granddaughter of Isabella Graham. With respect to Mrs. Whitridge it is insisted that she is not entitled to any portion of the unappointed estate unless she elects to surrender an equal amount of what has been absolutely allotted to her out of the settled property.

And this brings us to the fourth question in the case and that is this: In the doctrine of equitable election applicable to the situation presented by this record? The precise question is, shall Mrs. Whitridge receive the one hundred thousand dollars allotted to her by the will of Mrs. Greenway *and* one-sixth of the unappointed settled property covered by the second and fifth clauses of the will; or shall she be required to elect between these two claims? The doctrine of equitable election is thus defined in *Story's Equity Jurisprudence*, sec. 1075. "The obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he derives one that he should not enjoy both. Every case of election therefore presupposes the plurality of gifts or rights

with an intention expressed or implied of the party who has a right to control one or both that one should be a substitute for the other. The party who is to take has a choice but he cannot enjoy the benefits of both." It is similar to the doctrine of the Scotch law by which an individual is not allowed to approbate and reprobate. *Cordington* v. *Cordington*, L. R. 7 H. L. 854; *In re Chesham*, 31 Ch. Div. 466. The leading case in this State on this subject is *McElfresh* v. *Schley*, 2 Gill, 101. It was followed and approved in *Barbour* v. *Mitchell*, 40 Md. 163; *Albert* v. *Albert*, 68 Md. 372; *Hyatt* v. *Vanneck*, 82 Md. 476, and in other later cases. In the case of *McElfresh* v. *Schley*, the testator devised to one of his three sisters, certain real estate of which he was possessed and by the residuary clause he gave her money, choses in action and whatever real estate he might be possessed of at the time of his death. Future acquired lands, at the period at which that case was heard and determined, were as absolutely beyond the testamentary power of a testator as were lands which were not and might never be his; yet the clear intention of the testator in that case to dispose of the real estate he might acquire, even though it was legally impossible for him to make such disposition before acquiring it, was held to constrain his other devisees to abide by that devise or to renounce *pro tanto* the devises in their favor. The parties in interest there were three sisters of the testator. If he had been declared to have died intestate as to the future acquired land it would have descended to his three sisters as his heirs at law equally, share and share alike. The heir and devisee to whom one-third of the after acquired land descended was required to elect either to take the devises and bequests given to her by the will and to relinquish her right, as heir at law, in the after acquired land, or else if she claimed a third interest in the after acquired land, as heir at law, to relinquish the benefit given to her by the will. In the course of its judgment this Court said: "From the earliest case on the subject the rule is that a man shall not take a benefit under a will and at the same time defeat the provisions of the instrument. If he claims an interest under

an instrument he must give full effect to it as far as he is able to do so. He cannot take what is devised to him and at the same time what is devised to another although but for the will it would be his, hence he is driven to his election to say what he will take." In *Albert* v. *Albert,* 68 Md. 352, the donee of the power mingled his own property with that over which he had a power of appointment and the blended estate was then divided by him amongst his children and grandchildren in certain designated proportions. Some of the appointments were held to be bad so far as respected the settled property, because they violated the rule against perpetuities. The appointees whose shares were thus involved claimed the right to take their portions of the settled property against the provisions of the will, whilst at the same time they claimed to take their portions of the donee's individual property under and in pursuance of the provisions of the will. They were thus claiming both against and under the will, and the Court compelled them to elect whether they would stand upon the will in its entirety. The case at bar differs from any of those which have been heretofore decided in this State. In each and every instance, as far as we have been able to discover, there was either a blending of the individual property of the testator with property over which he had the power of appointment, or else, as in the *McElfresh* v. *Schley* case, it was only the individual property of the testator that was disposed of. Here, however, Mrs. Greenway's will was carefully divided into two distinct portions. The one was devoted exclusively to the settled property, the other exclusively to her individual property; and we must treat these separate dispositions precisely as though there were two separate wills. And that brings us to the inquiry as to whether the doctrine of election is applicable when nothing is disposed of by the donee of a power except the settled property. It was insisted that the doctrine of election was not applicable to the case before us because the limitations under the second and fifth clauses failed to take effect by reason of their being in violation of a rule of law. And the case of *Tongue* v. *Nutwell,* 17 Md. 212; *Barbour* v. *Mitchell,* 40

Md. 151; *Wollaston* v. *King*, L. R. 8 Eq. 165, were relied on to support this contention. *Tongue* v. *Nutwell*, was an action of ejectment; and at law there is no direct remedy to compel an election. *Story's Eq.*, 1077; *Barbour* v. *Mitchell*, 40 Md. 167, where the principle just quoted from *Story's Equity* was recognized and repeated. In *Barbour* v. *Mitchell, supra*, it was said, "to give effect by election, to a will whose provisions contravene the policy of the law, would be preferring private interests to the public good; but where no principle of public policy is violated, the doctrine of election conduces to equality and justice." This sentence was entirely aside from the point before the Court for decision. In that case Robert D. Sewall by his last will and testament gave to his two nieces as tenants in common all the property "which I may hereafter acquire by devise or bequest from my friend, Brinham, by whose last will and testament as now executed, I am sole legatee and devisee, to be equally divided between them." By the same will he gave to his nephew, Mitchell, valuable real estate and personal property and made him and his said two nieces his residuary legatees and devisees in equal proportions; the three being also his only heirs at law and next of kin. When Sewall died they entered upon and took possession of the real and personal estate devised and bequeathed to them respectively and of which Sewall then had seisin and possession. Brinham did not die until after the death of Sewall. He did not change his will by which his whole estate was given to Sewall. After Brinham's death, Mitchell, claiming that Sewall had died intestate as to the property left to the latter by Brinham, because Sewall had predeceased Brinham, filed a bill in equity against the nieces to whom Sewall had devised and bequeathed the property he expected to get under Brinham's will, praying for a partition between himself and them as heirs of Sewall of the land devised by Brinham to Sewall, and also sued them at law as sureties on the administration bond of their deceased father who had administered on the personal estate of Brinham, to recover his, Mitchell's, distributive share of the personal estate of Brinham, which he claimed did not pass under Sewall's

will, but to which Sewall if living would have been entitled. On a cross-bill filed by the defendants in that case, namely, the two nieces, asking that Mitchell might be enjoined from further prosecuting his action at law on the administration bond and that he might be required to convey to them his supposed interest in the real estate which Brinham, had devised to Sewall, but which Sewall died before acquiring; it was held that the fact that Sewall had no devisable interest in the property of Brinham at the time of making the will or at his, Sewall's decease, would not conflict with the doctrine of election and that that doctrine was applicable to the case; that Mitchell having taken possession of the real and personal property which Sewall had owned and which Sewall devised and bequeathed to him, should be enjoined from further maintaining his bill in equity for a partition of the real estate which had belonged to Brinham and which Sewall prior to Brinham's death had devised to the nieces, and from prosecuting his suit at law against them as sureties on the administration bond. No question, therefore, arose as to whether the doctrine of election was applicable to a case where a limitation over was void for remoteness and the *dictum* that we have quoted from *40 Md.* was not necessery to the decision of the case then before the Court. *Wollaston* v. *King*, L. R. 8 Eq. 165, has been recently overruled in *Bradshaw* v. *Bradshaw* (1902), 1 Chan. 436, in so far as concerns the *dictum* to the effect that the doctrine of election does not apply where there has been an attempt to execute a power in violation of the rules of law against a perpetuity.

Coming back to the inquiry as to whether this doctrine of election is applicable to a case where no other property is disposed of by the donee of the power than that over which he has the power of appointment, the precise question seems to have been settled in *Bristow* v. *Ward*, 2 Ves. Jr. 350. LORD LOUGHBOROUGH in disposing of that case where there was a defective appointment as to part of the settled property said: "The consequence is the remainder must be divided as in default of appointment unless it will hold as argued, and I do

not know how to state it as to this case, that the person to whom a specific share is appointed shall be excluded from taking any of the unappointed share because it is clear the father meant he should have no more than what was particularly given.   The doctrine of election cannot apply where there is no other subject but that to be appointed.   It can never be applied but where if an election is made contrary to the will the interest that would pass by the will can be laid hold of to compensate for what is taken away, therefore in all cases there must be some free disposable property given to the person which can be made a compensation for what the testator takes away.   That cannot be applied to this case where no part of his property is comprised in the will, but that which he had the power to distribute."   *In re Fowler's Trust*, 27 Beav. 362; *In re Brooksbank*, 34 Ch. D.  163; 11 *Ency. of Law*, 66.   As there is no "free disposable property" of Mrs. Greenway given under that portion of her will which relates exclusively to the settled property the case at bar would seem to fall exactly within the doctrine announced in *Bristow* v. *Ward*, and is, for that reason, clearly distinguishable from *Albert* v. *Albert*, 68 Md. 372.   Broad and comprehensive as the doctrine of election is, we are not prepared to hold that it is applicable to this case; and in so far as the Court below determined that Mrs. Whitridge is not to be put to her election, the decree is correct.   We now come to the last question presented on this record.

Under the will of Mrs. Grace Brown, executed on the 24th day of August, 1837, sundry trusts were created and amongst them was one in favor of her daughter, Mrs. Greenway.  With respect to that trust the will of Mrs. Grace Brown declared that the trustees should hold the principal in trust for Mrs. Greenway during the term of her natural life, paying her semi-annually the interest thereon to her sole and separate use free and clear from any and all control or interference on the part of any husband that she might then or thereafter have, and after Mrs. Greenway's death the said principal should be divided amongst her children, should she have any, or if she

should not have any children, amongst her brothers and sisters living at the time of her death, and if she should die without children or brothers and sisters, then, amongst "*her next of kindred*" free and clear from the operation of the trust previously declared.   Mrs. Greenway, as we have stated, died without ever having had any child or children.   Her brothers, George S., Alexander D., and her sister, Isabella Graham, all predeceased her.   Her deceased brother, George S., left surviving a son Alexander, who is now living.   Her sister left surviving a son and a daughter.   The son is now dead leaving: one child, Isabella B. Graham, who has been heretofore mentioned.   Isabella Graham, the sister of Mrs. Greenway, also left surviving a daughter, Mrs. Elizabeth Whitridge.   Alexander Brown, is therefore, a nephew and Mrs. Whitridge, a niece, of Mrs. Greenway.   The children of George Brown, the second, and the child of George B. Graham are grandnephews and grandnieces of Mrs. Greenway.   The question is, who take under the will of Mrs. Grace Brown as the "*next of kindred*" of Mrs. Greenway, the trust estate held for the benefit of Mrs. Greenway during her natural life under the will of her mother Grace Brown ?   The term "next of kin" is used to signify the relatives of a person, sometimes in the sense of nearest blood relatives, and at other times, in the sense of relations entitled to take under the Statute of Distributions.   21 *Am. & Eng. Ency.* 537.   If the phrase, "next of kindred" is to be interpreted in the sense of nearest blood relations, then Alexander Brown and Mrs. Whitridge, being nearest of kin to Mrs. Greenway, are entitled under the limitation over in the will of Mrs. Grace Brown, to the trust fund held by the trustees under that will.   If, on the other hand, the term "next of kindred" is to be taken in the sense of relations who come in under the Statute of Distribution, then again the same parties, Alexander Brown and Mrs. Whitridge, are entitled.   *McComas et al.* v. *Amos et al.,* 29 Md. 120; *Robins et al.* v. *The State,* 1 H. & G. 476; *Duvall* v. *Harwood,* 1 H. & G. 474.   The children of George Brown, the second, and the child of George B. Graham, being grandnephews

and grandnieces of Mrs. Greenway, are excluded from participation in this trust fund. Such is the conclusion reached by the Court below and with that conclusion we concur.

It follows from the views we have herein expressed that so much of the decree of Circuit Court No. 2 as holds that the limitations over in remainder under clauses two and five of Mrs. Greenway's will are void for remoteness, is correct; that so much of the same decree as upholds the allotment of one hundred thousand dollars to Mrs. Whitridge and the allotment of ten thousand dollars to Harriet S. Brown and Bessie M. Brown each, is accurate; that so much of said decree as distributes to Alexander Brown and Mrs. Whitridge the entire trust fund created by the will of Mrs. Grace Brown in favor of Mrs. Greenway for life with remainder over to Mrs. Greenway's "*next of kindred*" is free from error; and that so much of the decree as declares that the doctrine of election is not applicable, is also accurate; but that that portion of the decree which strikes down the life estates created under the second and fifth clauses of the will of Mrs. Greenway is erroneous and must be reversed.

The costs in this Court as well as in the Court below will be decreed to be paid out of the settled property.

> *Decree reversed in part and affirmed in part, and cause remanded, that a new decree may be passed conforming to this opinion; the costs to be paid out of the trust estate which passes under the will of George Brown, the elder.*

(Decided March 23rd, 1904.)

———————————

Upon a subsequent petition by the trustees under the will of George Brown for further instructions,

McSHERRY, C. J., delivered the opinion of the Court.

Since the decision of these cases by this Court, the trustees

under the will of George Brown, the elder, have filed a petition asking further instructions as to their duties with respect to the fund which by that will was made subject to the power of appointment conferred upon the testator's daughter, Mrs. Greenway. The precise questions upon which the opinion of the Court is now asked are as follows: *First.* What is the character of the life estates which by the former judgment of this Court were held to be valid; that is to say, are those life estates equitable or legal? *Secondly.* If legal, who is to be entrusted with the possession of the *corpus* of the fund; that is to say, are the securities which yield the life tenants income and in which the remainders are now invested, to be held by the trustees under the will of George Brown during the lives of the life tenants, or must a trustee or trustees be appointed by decree to preserve the remainders for the benefit of the remaindermen? *Thirdly.* If trustees must be appointed for the purposes just indicated will it be their duty to sub-divide the investments into as many parcels as there are life estates, or will they be permitted to hold them *in solido* and to divide the income amongst the respective life tenants? *Fourthly.* From what date are the legacies of one hundred thousand dollars to Mrs. Whitridge and of ten thousand dollars each to the two daughters of Alexander Brown to bear interest?

*First.* We are of opinion that the life estates already alluded to are legal and not equitable estates. It will be remembered that under the sixth article of the will of the late George Brown, the elder, two-fourteenths of the rest and residue of the remainder of his estate were given in trust to certain named trustees for the use and benefit of his daughter, Mrs. Grace Ann Greenway, for and during the term of her natural life. The trustees were charged with active duties with respect to the *corpus* of that trust fund and also with respect to the interest and income arising therefrom during the period of the life estate mentioned. In and by the same article of the testator's will, Mrs. Greenway was given a power of appointment over the trust fund, and it was declared that in the event of the life tenant's death without leaving a child or children, the

trustees should continue to hold the trust fund "to and for" such of the other children of the testator, or their descendants, in such proportion and for such estate and estates therein, either in fee or for a less estate, and with such limitations and conditions as Mrs. Greenway, might by any instrument of writing in the nature of a last will and testament name, limit and appoint.    Mrs. Greenway in execution of this power did limit and appoint to the persons named in the fifth clause of her will certain life estates with remainders over.    The remainders, thus limited, we have declared to be void and we have held the life estates to be valid.    Now the question is, are the life estates thus created equitable or legal?

It will be noticed that nowhere in the will of George Brown, the elder, is there a single active duty prescribed to be performed by the trustees after the death of Mrs. Greenway.    The declaration that they shall continue to hold the two-fourteenths "to and for" such of the persons as Mrs. Greenway might by her last will and testament appoint, creates no active duties for the trustees to perform either towards or concerning the fund itself, or the income that may accrue thereon, or the persons entitled to that fund under the allotments made in the will of Mrs. Greenway or the persons who would take in the event of her failure to make allotments.    Now it is a perfectly well-settled principle, which has often been recognized and applied by this Court, that where an estate is given to trustees and their heirs in trust to pay the income to a person for life and at his or her decease merely to hold the same for the use of other persons named, the trust ceases upon the death of the life tenant, for the reason that it remains no longer an active trust. The Statute of Uses in such cases immediately executes the use in those who are limited to take the estate after the death of the life tenant, and the trustees cease to have anything in the estate, not because the Court has abridged their estate to the extent of the trust, but because the *cestui que trust* having the fee or legal estate the Statute of Uses has executed it in him.    *Perry on Trust*, sec. 320; *Ware* v. *Richardson*, 3 Md. 542; *Lewin on Trust* (9 ed.), ch. 12, sec. 1; *Kenrick* v. *Lord*

*Beauclerck*, 3 B. & P. 178; 3 *Jarman on Wills* (5 Amer. ed.), 60; *Abell* v. *Abell*, 75 Md. 61; *Long* v. *Long*, 62 Md. 65.

The Statute of Uses is applicable to wills; 3 *Jarman on Wills* (5 Amer. ed.), 50. As we have just said no duty is imposed upon the trustees to be discharged towards or in behalf of the persons whom Mrs. Greenway might name in the allotment of the trust estate nor towards or in behalf of the persons entitled in the event of her failure to make allotments. There is no instruction to pay over the income to such person or persons or to invest it; nor is there any authority given to the trustees to collect the income after the death of the life tenant. Instead of such an instruction being given the property is bequeathed to the trustees to have and hold "to and for" the persons Mrs. Greenway might nominate and appoint to receive it or in default of such appointment "to and for" the persons named by the testator. This is a mere naked trust without active duties of any kind. Under such circumstances the Statute of Uses, 27 *Henry*, 8 ch. 10, transfers the use in possession by converting the estate or interest of the *cestui que trust* into a legal estate and by destroying the intermediate estate of the trustee. Or to put it more concisely; when the purposes for which it was created are satisfied the estate of the trustee ceases to exist and his title becomes extinct. *Doe* v. *Considine*, 6 Wallace, 458; *Young* v. *Bradley*, 101 U. S. 782; *Doed.*, *White* v. *Simpson*, 5 East. 163. If the trust as to the life estates does not cease then there is no reason why it should not continue with respect to the one hundred thousand dollars allotted to Mrs. Whitridge and the twenty thousand dollars allotted to the daughters of Alexander Brown; because to these specific allotments precisely the same language as that pertaining to the life estates is applicable, namely, that the trustees shall hold them "to and for" those legatees. Inasmuch, then, as the life estates are legal and not equitable, and inasmuch as the life tenants are also entitled to vested remainders in a portion of the two-fourteenths disposed of under the will of George Brown, the elder, the two estates, the life and the remainders, coalesce and unite in the same individuals

and those individuals take, to the extent of the respective vested remainders, an absolute estate disengaged from any trust whatever.

*Secondly.* With respect to that portion of the estates in remainder in which the life tenants are only entitled to a life interest, that is to say, that portion which after the termination of the life estates belongs to Mrs. Whitridge and to Alexander Brown, and in which the life tenants have no vested interests in remainder, the trustees under the will of George Brown have no active duties to perform and, therefore, for the reasons hereinbefore assigned, the trust has ceased. This being so the parties entitled in remainder to this portion of the residue of the two-fourteenths may go into a Court of equity and procure the appointment of a trustee to take possession of the fund for its preservation and to pay over the income arising out of it to the parties entitled to the life estates therein. By that proceeding the life tenants will be secured their income therefrom, and the remaindermen will be protected against loss of the principal.

*Thirdly.* To preserve equality amongst the remaindermen the trustee or trustees appointed for the preservation of the remainders should set apart and apportion, as far as practicable, the investments in which the trust funds constituting that portion of the remainders may be invested, into as many equal parts as there are life estates. If the whole fund should be held *in solido* then as each life estate drops out it will be necessary, in turning over to the remaindermen that portion of the remainder, to sell or dispose of, in some other way, so much of the total remainder as represents the particular life estate thus terminated; whereby it might so happen that upon the final termination of all the life estates the portion remaining would by reason of depreciation in the value of the securities in which the whole had been invested be of comparatively trifling value.

*Fourthly.* Both Mrs. Whitridge and the Misses Brown, daughters of Alexander Brown, are entitled to interest on their respective legacies from a period of time when those leg-

acies are payable, that is to say, from one year after the death
of Mrs. Greenway, she not having stood towards them *in loco
parentis.*   *Von Der Horst* v. *Von Der Horst,* 88 Md. 130.

These views cover all the points upon which our opinion
has been sought and we will direct a decree to be drawn con-
forming thereto.

(Decided June 8th, 1904 )