## EMILIE McKIM REED et al. *vs.* ELIZABETH GRANT McILVAIN.

*Power of Appointment by Will—Rule Against Perpetuities— Invalidity of Some Appointments by Will Under Power Rendering Invalid the Others.*

The limitations made in the exercise of a power of appointment must be construed as if they were inserted in the instrument creating the power. .

A limitation in a will restraining the alienation of certain property during the life of the testator's daughter and for the lives of children who might be born to her after his death, would extend to a life then in being and to lives which by possibility might come into being after his death, and such limitation therefore violates the Rule against Perpetuities and is void.

A testator gave certain real and personal property to a trustee for the benefit of his daughter Sarah for her life, and after her death for such persons as she should appoint by last will, and in default of such appointment for her heirs. At the time of the death of the testator, Sarah had three children living and another child, E., was afterwards born. By her will, professing to be in execution of the power and which also blended her own property with that over which she had the power of appointment, Sarah devised one-half of the property to two of her children absolutely; gave one-fourth part to trustees for the use of a third child for life, with power of appointment, and gave the remaining fourth to trustees for the benefit of her daughter E. for life with power of appointment among the descendants of the testatrix, and in default thereof, to the heirs of the testatrix *Held.* that the appointments made by Sarah must be construed as if contained in the will of the testator, and when so construed, the appointment for the benefit of E., who was born after the

death of the testator, is void, because it violates the Rule against Perpetuities.

*Held,* further, that since this appointment made by the will of Sarah is void, the other appointments must also fail, because she obviously intended to divide the property equally among her children, and if these other appointments be upheld, it would defeat the entire scheme of her will as to the appointed estate, but that the disposition made of her own property in the same will is effectual.

*Decided April 1st, 1910.*

Appeal from the Circuit Court of Baltimore City (HEUISLER, J.).

The cause was submitted to the Court on briefs by:

*M. R. Walter,* for the appellants.

*Alexander Hardcastle, Jr.,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

The bill in this case was filed by the appellee, Elizabeth G. McIlvain, to obtain a judicial determination of the validity of certain appointments of property made by Sarah B. McIlvain in her will, in virtue of a power of appointment conferred upon her as to said property, by her father, James Beatty, in his will, the case being heard on the bill, exhibits and answers.

James Beatty died in 1851, leaving a will and codicil duly executed and probated, the former dated May 6th, 1848, and the latter June 28th, 1851.

The fifth clause of the will is the only clause which it is necessary to consider. By that clause the testator gave to his son, George J. Beatty, certain real and personal property, in trust for the sole and separate use of his daughter Sarah B. McKim (who afterwards married Donald McIlvain) for the term of her natural life, and from and after her death,

"in trust as to the principal of said estate, property and funds, for the use of such person or persons, or for such uses and purposes as the said Sarah shall, by her last will and testament, executed in the presence of, and attested by three credible witnesses (which will and testament she is declared competent, and is hereby authorized and empowered to make and execute, her coverture notwithstanding, or whether sole or covert at the time of the execution thereof) shall have named, limited and appointed; and in default of such nomination, limitation and appointment, then for the use of such person or persons ·as would by the now existing laws of the State of Maryland be entitled to take an estate in fee simple in lands by descent from her, their heirs and assigns, to be then conveyed, assigned, paid and delivered over to such person or persons, when the trust hereby created shall cease."

The testator's wife Elizabeth, and daughter Mary, having died between the dates of the will and codicil, he revoked by the codicil, all devises and bequests in their favor, and also the residuary clause of his will, and made other disposition of the property not disposed of by said will and codicil, into six parts, one of which he gave to George J. Beatty in trust for Sarah B. McKim "in the same manner, and for the same uses and purposes," as that portion of his estate which was by said will devised and bequeathed in trust for said Sarah B. McKim.

Subsequently, by proper proceedings, George J. Beatty was released as trustee, and Donald McIlvain was appointed in his stead, and upon his death, John McKim, son of Sarah B. McKim, was appointed in his stead.

Sarah B. McIlvain died January 31st, 1899, leaving a will and codicil, the former of which, we will transcribe herein, but it will not be necessary to set out the codicil in full:

"Last Will and Testament          The last will of me, Sarah B. McIlvain, wife
          of          of Donald McIlvain, of Baltimore City and State
Sarah B. McIlvain.          of Maryland.

"Whereas by a power reserved to me in a Bill of Sale in trust dated the 3rd day of November, A. D. 1849, and duly recorded among the Chattel Records of Baltimore City in Liber A. W. B. No. 78, folio 384, etc., enabling me to devise and bequeath the property therein specified, now I do devise the same to my son John McKim and to my daughter Emilie McKim Reed, or to the survivor, if either of them should die in my lifetime, absolutely, and the proceeds thereof, and whatever has or may be purchased with its proceeds.

"And whereas also by the last will and testament, and Codicil thereto of my Father, James Beatty, I am empowered to devise the estate, property and funds therein devised by him for my sole and separate use, now, therefore, in execution of said power I give and devise the whole of the said estate and property, however the same may now, or hereafter be invested, or in whatsoever condition it may be in at the time of my death, to my son John McKim and to my son-in-law William Reed in trust to apply the one-half of the net income and profits therefrom accruing to the use of my husband Donald McIlvain for and during his natural life, and to apply the remaining half in equal parts to the use of my son James William McIlvain and of my daughter Elizabeth Grant McIlvain, and I also devise to them upon the same trust all other property of which I shall die seized and possessed, except the property mentioned and described in the Bill of Sale aforesaid, at and after the death of my said husband then the said property is to be divided into four equal parts, one part of which I devise to my son John McKim, and his heirs absolutely; one other part to my son James William McIlvain and his heirs aboslutely. The remaining two parts are to be continued to be held by my said son John McKim and William Reed upon the following trusts, namely, as to one of said shares to permit and suffer my daughter Emilie to receive, collect and apply to her own sole and separate use net income therefrom for and during her life, with no power to her to alienate or anticipate the said income, at and after her death to hold the same for any children she may have living at the time of her death, or their descendants, the descendants of any child dying to take the share its or their parent would have taken if living, and in the event of there

being no such children, then to hold the same for such of my descendants as the said Emilie may by last will name, limit and appoint, and failing so to appoint, then to such persons at the time of her death as would then be my heirs at law, and to hold the last remaining fourth for the use and benefit of my daughter Elizabeth Grant McIlvain in the same manner, upon the same trusts, power of limitation and appointment as are herein provided and directed as to the share for her sister Emilie, and I declare this paper to have been executed by virtue of all and every power me thereunto enabling, and I do hereby revoke all other wills by me at any time heretofore made, and hereby con- stitute my son John McKim sole executor thereof, and I wish that he as executor shall be excused from the necessity of giving Bond for the performance of his duties as such.

"Witness my hand and seal this Thirteenth day of May, A. D. 1884.

Sarah B. McIlvain.   (Seal)"

By the codicil she declared that her husband Donald Mc- Ilvain had died since the date of her will, and directed that the devises and bequests in said will of her own property and of that over which she had the power of appointment should take effect immediately on her death, and gave her said trustees full power to sell and convey all said property and to invest and reinvest the proceeds on the same trusts.

Sarah B. McIlvain left surviving her four children, viz. John McKim, Emilie McKim Reed, wife of William Reed, James William McIlvain all of whom were born during the life of their grandfather, James Beatty, and the appellee Elizabeth G. McIlvain, who was born after the death of said James Beatty, but Mrs. McIlvain left no other issue or de- scendants living at her death. John McKim died in 1905, unmarried and without issue, leaving a will devising and bequeathing all his estate equally to Mrs. Reed, James Wil- liam McIlvain, and Elizabeth G. McIlvain as tenants in com- mon, and in case of the death of either without issue, the share of the one so dying to pass to the other two, share and share alike, and to the heirs, executors and administrators of

such others. James William McIlvain died in 1909 leaving surviving him, his widow Amelia F. McIlvain, but no children or descendants, and leaving a will by which he devised and bequeathed all his estate to his said widow, who was also made his executrix.

William Reed, the surviving trustee under the will of Sarah B. McIlvain, died in 1908, leaving his widow, Emilie McKim Reed, but no children or descendants, and leaving a sister, Anna R. Lewis, his only heir at common law, and leaving a will by which he devised and bequeathed all his estate to his said widow who was also made his executrix. Upon his death, the legal title to the real estate embraced in the trust descended to his said heir at common law, and the title to the personal property embraced in the trust devolved upon his executrix Emilie McKim Reed.

The parties to this proceeding are the appellee, Elizabeth G. McIlvain as plaintiff, and the said Emilie McKim Reed, both in her own right, and as executrix of William Reed, trustee; Amelia F. McIlvain, both in her own right, and as executrix of James William McIlvain, and Anna R. Lewis heir at law of William Reed, and as such, trustee holding the legal title to the real estate embraced in the trust.

The bill alleges that the appointments made by Sarah B. McIlvain under the power in the will of James Beatty, to John McKim, James William McIlvain, and Emilie McKim Reed, are upon their face good, but that inasmuch as the plaintiff was not born until after the death of James Beatty the appointment for her, with the remainder or limitations over, violates the rule against perpetuities and is therefore void, and that if the will of Sarah B. McIlvain is to stand, the one-fourth appointed for the plaintiff, would pass under the will of James Beatty to the heirs at law of Mrs. McIlvain, viz, John McKim, James William McIlvain, Emilie McKim Reed and the plaintiff, whereby the three first named would each receive five-sixteenths of the appointed estate, while the plaintiff would receive only one-sixteenth, though it is clear that it was the intention of Mrs. McIlvain in exe-

cuting the power of appointment to make an equal division of the appointed estate among all her children. The bill further alleges that the invalidity of the appointment for the plaintiff, if the other appointments are upheld, will defeat the whole scheme of the will of Mrs. McIlvain, and that in consequence the entire execution of the power of appointment by her should be declared void, and that the entire appointed estate should therefore pass under the will of James Beatty to her heirs absolutely, share and share alike and prayed the Court to decree accordingly.

Anna R. Lewis answered consenting to the appointment of some other trustee in her place, and submitting to any decree the Court deemed proper, and the other defendants answered admitting all the allegations of fact in the bill but denying the construction of the plaintiff in so far as it affected the appointments to John McKim, Emilie McKim Reed and James William McIlvain.

The Court decreed the appointment to the plaintiff to be void because in violation of the rule against perpetuities, and decreed the entire execution of the power to be void, and confirmed the auditor's account dividing the appointed estate as set forth in the bill, except that it decreed the shares of Emilie McKim Reed, and the plaintiff should be held by them absolutely, free and discharged of all trusts, and from that decree this appeal is taken.

The appellants concede the appellee's first contention that the appointment to the appellee violates the rule against perpetuities, and is for that reason void, and it would seem no other conclusion could be reached.

To test the validity of this appointment it is necessary to read the gifts made by the will of Mrs. McIlvain as if they had been written in and formed part of the will of James Beatty in the place of the power itself therein contained. *Albert* v. *Albert,* 68 Md. 372. "It has always been held without question that a limitation under a power of appointment must be construed as if it were inserted in the instrument creating the power." *Thomas* v. *Gregg,* 76 Md. 174.

Applying the language of JUDGE BRYAN in *Thomas* v. *Gregg,* *supra,* we find that if we read the limitations declared in Mrs. McIlvain's will, as a part of her father's will, that the property in question would be given to Mrs. McIlvain for her life, and after her death it would be given to trustees, who were required to hold it during the lives of her children, including such as might at any time be born to her, suffering them to collect and receive the rents, issues, income and profits thereof. A limitation in Mr. Beatty's will restraining the alienation of this property for the life of his daughter, and for the lives of children who might be born to her after his death, would extend to a life then in being and to lives which, by possibility, might come into being after his death, and the limitation in question therefore transgresses the rule and is for that reason void.

The appellees rely in support of the decree below upon the case of *Myers* v. *Safe Deposit and Trust Co.,* 73 Md. 413, and we are of opinion that this case is controlled by that decision.

In that case Charles Myers, by his will gave the residue of his estate to his wife for her life and after her death directed that said residue should become the property and estate of such of his children and grandchildren as she by her will should appoint, and in default of such appointment, that the same should pass to her children and descendants as if he had died intestate.

She, by her will, blended her own and her husband's estate, dividing the whole into three equal parts, two of which she subsequently divided each into three equal parts. One-third of the whole blended estate she gave absolutely to one of her sons. One-third of one of the other three equal parts, or one-ninth of the whole she gave absolutely to a grandson. The remaining one-third and two-thirds of one-third, being five-ninths, she gave to the Safe Deposit and Trust Company in trust for certain beneficiaries for life with remainders over. This Court held that "the testator designed whoever the wife nominated, to take an absolute estate in the person-

alty and a fee in the realty, and that she was given no power by implication to create a trust, and name a stranger to take the title and hold it in trust for the beneficiaries she should name. * * * That she had only a special power, and if she failed to exercise it, the estate was to pass absolutely in fee to the testators' descendants." The Court said "Manifestly Charles Myers designed his whole estate as an entirety to pass by his will to his children or grandchildren who should be designated by his wife, * * * she had the power of selection and the power of exclusion. 1 *Chance on Powers,* sec. 1055. But she was to appoint *the whole estate* to some of the objects, and for an absolute estate * * *. He clearly did not mean that his wife should leave a part unappointed and to pass as if he died intestate. To hold these partial appointments good and the rest ineffectual would defeat *his* wishes and will." The Court also said, *"she* did not design her son or grandson to have any more of the estate than she named them to take; whereas if the appointments to them are upheld, and they are also admitted to share in the unappointed portions they will get largely more than a due and fair proportion of the estate; this was clearly not designed by Mrs. Myers and we ought not to give effect to that which *she* did not contemplate as the result of *her* will * * * and we think we ought to treat her effort to execute the power as wholly abortive, and to allow the whole estate of Charles Myers to pass as if he had died intestate. This will certainly do exact justice; for equality is equity, and will better meet the wishes of both testators than by supporting the partial appointments which are apparently good." To no case could the foregoing language be more forcibly and justly applied than the one now before us where to hold otherwise would be to introduce a shocking inequality between children of the donee of the power apparently equally meritorious and dear to her.

The appellants however contend that this case falls more properly within the case of *Graham* v. *Whitridge,* 99 Md. 248.

In that case the power of appointment given by the will of George Brown to his daughter, Mrs. Greenway, was to appoint "for such of his other children or their descendants, and in such proportions, and for such estates therein, either in fee, or for a less estate and with such limitations and conditions, as she should limit and appoint;" and in executing this power by her will she did create less estates than a fee in some cases, and in others created various limitations and conditions. In doing so the Court said "she acted literally within the terms of the power but violated in some of the appointments the rule of law prohibiting the creation of a perpetuity," and the Court said, "there is a distinction between the repudiation of a power as in the *Myers Case,* and the exercise of it as in this case, though in the exercise of it, the limit as respects remoteness in vesting is inadvertently overstepped;" and it was there held, under the circumstances of that case, that "the failure to make a complete and effective appointment of the whole estate could not be treated as a failure to make any appointment at all, and to require that the appointments confessedly well made, be stricken down and that the whole settled estate should pass under the limitations of Mr. Brown's will just as if no appointment of any kind had been made by Mrs. Greenway." JUDGE McSHERRY pointed out that Mrs. Myers, as Mrs. McIlvain did in this case, blended her own with her husband's estate, while Mrs. Greenway "carefully divided her will into two distinct portions, one of which was devoted exclusively to the settled property and the other exclusively to her individual property" and he said "we must treat these separate dispositions precisely as though there were two separate wills." He cited and quoted *Bristow* v. *Ward,* 2 Vesey, Jr., 350, to show that where no other property is disposed of by the donee of the power than that over which he has the power of appointment, well executed appointments are not invalidated because one or more are ill appointed, and that the doctrine of election cannot apply where there is no other subject but that to be appointed, and he says on page 285 : "The case at bar differs

from any of those which have been heretofore decided in this State. In each and every instance, so far as we have been able to discover, there was either a blending of the individual property of the testator with that over which he had the power of appointment, or else as in the *McElfresh* v. *Schley Case,* (2 Gill, 101), it was only the individual property of the testator which was disposed of."

It is thus obvious that if Mrs. Greenway had blended her estate with her fathers, the Court would have held that that case would have been governed by the decision in *Myers* v. *Safe Deposit and Trust Co., supra,* and as Mrs. McIlvain did blend her estate with her father's, the decree of JUDGE HEUISLER which nullified the entire attempted appointment of the settled estate without disturbing the disposition of Mrs. McIlvain's individual estate should be affirmed.

> *Decree affirmed, the costs above and below to be paid equally by Mrs. Emilie Mc-Kim Reed and Elizabeth Grant Mc-Ilvain.*