GABRIELLE EDMONDSON GAMBRILL and CHAUN-
CEY GAMBRILL, Her Husband, °

*vs.*

HELEN EDMONDSON GAMBRILL, An Infant.

*Wills*: *construction; Rule Against Perpetuities; to what estates
applicable.*

For the purpose of considering the applicability of the rule
against perpetuities, dispositions made in a will, under a power
of appointment conferred by a former will, are to be treated
as though they had been made by the testator from whom the
authority to make the appointments emanated.          p. 568

To test the validity of such appointments, they are treated
as if inserted in the instrument creating the power.      p. 568

The object of the rule against perpetuities is to prevent the
limiting of the future vesting of estates upon contingencies
which are not certain to happen within the period of a life
or lives in being at the time when the instrument making the
disposition takes effect, and twenty-one years and a fraction
thereafter.                            p. 568

The rule is applicable to limitations of both legal or equi-
table estates, and to both real or personal property.      p. 569

In applying the rule, it is to be taken to relate to the *com-
mencement* of future interests and not to their *duration;* and it
is immaterial whether the estate limited is in fee, for life, or for

a term of years, provided the event upon which the limitation depends is certain to occur within the period the rule defines.

p. 569

In determining the question of remoteness prohibited by the rule, regard is to be had to *possible*, and not merely to *actual* events.                                              p. 569

A limitation that provides for a future estate, whose vesting is dependent upon a contingency which will not be determined until the expiration of a life which came into existence after the death of the original testator, is within the prohibition of the rule.   °                                          p. 570

Where an interest or estate is given by deed or will with a limitation over upon a specified contingency, such limitation, if it violates the rule against perpetuities, is, for the purpose of determining the effect on the prior disposition of the property, to be considered as stricken out, leaving the prior disposition to operate as if no limitation over had been made.        p. 570

If a limitation be good within the rule against perpetuities, it is immaterial whether the estate given be in fee, or for life.

p. 571

By the will of T. E. a trust estate was left for the benefit of his daughter E. C. for her life, and after her death "for such uses, intents and purposes" as she might by her last will direct and appoint; if she "shall die intestate, after marriage or attaining the age of 21 years, her share to go to her heirs at law." E. C., exercising the powers conferred on her by the will of T. E., devised the estate to her husband for life, and upon his death, to her daughter, G. C., the grand-daughter of T. E., for her natural life, with power and authority, upon her attaining 18 years of age, or if she should marry, to dispose of the estate by will; but in case of her death intestate, then to the child or children of the said daughter, their heirs, etc.; or, upon her dying without issue, then to those entitled as the heirs at law of the testatrix (the daughter of T. E.). As the disposition was to be deemed as having been made by the will of T. E., the grandfather, the period within which it must vest is to be computed with reference to the time of the grandfather's death; and the limitation is to be treated as if made by him for the

benefit of an unborn grand-daughter for life upon the termination of the preceding life estates to her parents, and since the vesting of the grand-daughter's life estate was limited to occur immediately upon the death of her father and mother, who were both living when the grandfather's will took effect, it therefore was certain to vest within the limitations of the rule.

pp. 570-571, 579

But in such a case the exercise of the power of appointment, under her father's will, that E. C. attempted to make, after the life estate of her daughter, were in violation of the rule against perpetuities, and were void.    p. 574

Therefore, under her father's will, E. C. died intestate, as to the remainder, after her daughter's life estate.    p. 574

Under the facts of the case, the daughter, being her mother's only heir, the whole estate passed to her, under the provision of the grandfather's, T. E.'s, will, that should his daughter die intestate, the property should descend to her heirs at law.

pp. 574-575

A devise for life to the unborn child of a person who is living at the death of the testator is valid under the rule.    p. 574

The cases of *Read* v. *McIlvaine* and *Thomas* v. *Gregg,* in so far as they confine the *duration* of a trust to the time of a life or lives in being and twenty-one years thereafter, instead of merely restricting the *future vesting* of an estate within that period, are not in accordance with the purpose and effect of the rule as defined in the earlier decisions in Maryland.    p. 574

*Decided February 4th, 1914.*

Appeal from the Circuit Court of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The case was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Wilton Snowden, Jr.,* for the appellant.

*Wm. H. Surratt,* submitted the case on brief for the appellee.

URNER, J., delivered the opinion of the Court.

By the will of Dr. Thomas Edmondson, of Baltimore City, who died in 1856, a trust was created, as to a stated share of his residuary estate, for the benefit of each of his daughters during her life, and after her death "for such uses, intents and purposes" as she might by her last will direct and appoint. It was provided that if any of the daughters should die intestate, after ·marriage or attaining the age of twenty-one years, her share of the estate should go to her heirs under the laws of Maryland. The testator's daughter, Emma, was married in 1869 to Gabriel D. Clark, Jr., and died in 1872, survived by her husband and a daughter and leaving a will whose sole object, as indicated by its terms, was to exercise the power of testamentary disposition given her by the will of her father as to the estate of which he had made her the life beneficiary. The will of Mrs. Clark, after making certain pecuniary bequests, disposed of the residue of the estate as follows:

> "All the rest and residue of my estate, real, personal
> or mixed, I give, devise and bequeath to my dear hus-
> band, Gabriel D. Clark, Jr., for and during his nat-
> ural life; and from and immediately after his death
> I give, devise and bequeath my said estate to my
> daughter, Gabrielle Edmondson Clark, for and during
> her natural life, with power and authority to my
> said daughter, upon her arriving at the age of eighteen
> years, or upon her marriage, to dispose of said estate
> by last will and testament to such person or persons
> as she may think proper; but in case of the death of
> my said daughter without leaving a will, then the
> estate is to go to the child or children of my said
> daughter, their heirs or assigns, to be equally distrib-

uted between them, if more than one, *per stripes* and
not *per capita.* But in the event of the death of my
said daughter without leaving children, and without
leaving a will, then I give and bequeath the said
estate to such person or persons as may under the
Laws of the State of Maryland be entitled to take
an estate in fee from me."

The testatrix appointed her husband as the executor of her
will and conferred upon him power and authority to sell all
or any part of the estate and to reinvest the proceeds.   The
estate now consists of certain real and leasehold properties in
Baltimore City, of considerable value, and securities worth
about $35,000.00.   Mr. Clark upon the death of his wife
came into possession of the estate, and held it as life tenant
until his death in 1910.   He was survived by his daughter.
named in the will, who was married to Chauncey Gambrill in
1892.   They have one child, a daughter, now about nine
years of age.   In this amicable proceeding, the inquiry is as
to the nature and extent of the interest vested in Mrs. Gam-
brill under the wills to which we have referred.   The theory
of the bill is that the attempted exercise by Mrs. Clark of
the power of appointment given by her father's will was in
violation of the rule against perpetuities and therefore totally
ineffective and void, and that the devolution of the estate is
consequently governed by the provision, in Dr. Edmondson's
will, that upon the death of any of his daughters intestate her
share should pass to her heirs.   The result of this construc-
tion would be to vest the estate in Mrs. Gambrill absolutely,
as she was Mrs. Clark's only child and heir at law.   This
view was not accepted by the Court below, but its conclusion
was that the execution of the power of appointment was valid
to the extent of the successive life estates it created for the
benefit of the husband and daughter of the testatrix, and that
it was void only in so far as it sought to subject the estate to
a second power of testamentary disposition.   It was accord-
ingly decreed that Mrs. Gambrill was entitled to an estate

for life only, and that at her death the property would belong to the heirs of Mrs. Clark upon the theory that she died intestate as to the remainder and that the title passed as provided by the will of her father in reference to such a contingency.

For the purposes of the present inquiry the dispositions made by the will of Mrs. Clark under the power conferred by her father's will must be treated as if they had been made by the testator from whom the authority emanated. It is a settled rule that in order to test the validity of such appointments they must be construed as if they were inserted in the instrument creating the power. *Levenson* v. *Manly,* 119 Md. 517; *Reed* v. *McIlvain,* 113 Md. 146; *Graham* v. *Whitridge,* 99 Md. 248; *Thomas* v. *Gregg,* 76 Md. 174; *Albert* v. *Albert,* 68 Md. 372. If the appointments made by Mrs. Clark are read into the will of her father, and are considered in connection with the other terms of that instrument, he must be regarded as having devised and bequeathed the estate in trust for Mrs. Clark's benefit during her life, and after her death for her husband for his life, and after his death for their daughter for her life, and after her death "for such person or persons as she may think proper" to appoint by her will; and in the event of her death without leaving a will then for her child or children, their heirs or assigns, *per stirpes,* and in case of her death without leaving children or will, then for the heirs of Mrs. Clark under the laws of Maryland.

The question we have to decide is to what extent, if at all, this disposition of the estate contravenes the rule against perpetuities. The object of the rule is to prevent the limitation of estates for future vesting upon contingencies which are not certain to happen within the period of a life or lives in being, when the instrument making the disposition takes effect and twenty-one years beyond, with an additional allowance of time for the possible birth of a posthumous child. *Dallam* v. *Dallam,* 7 H. & J. 220; *Newton* v. *Griffith,* 1 H. & G. 111; *Biscoe* v. *Biscoe,* 6 G. & J. 232; *Barnum* v. *Barnum,* 26 Md. 171; *Heald* v. *Heald,* 56 Md. 300; *Starr* v.

*Starr M. P. Church,* 112 Md. 182; *Hollander* v. *Central
Metal Co.,* 109 Md. 157; *Graham* v. *Whitridge; Levenson*
v. *Manly, supra.* The rule is applicable to limitations of
either legal or equitable estates in either real or personal
property. *Graham* v. *Whitridge, supra; Biscoe* v. *Biscoe,
supra;* 1 *Perry on Trusts,* secs. 378, 382. It relates to the
*commencement* of future interests and not to their *duration,*
and it is therefore immaterial whether the estate limited is
in fee, for life or for years, provided the event upon which
the limitation depends is certain to occur within the period
which the rule defines. *Heald* v. *Heald, supra; Hollander*
v. *Central Metal Co., supra; Graham* v. *Whitridge, supra;
Lewis on Perpetuities,* 460-1; 1 *Jarman on Wills,* 340; 1
*Perry on Trusts,* sec. 380; 1 *Tiffany on Real Property,* sec.
152; *Gray on Perpetuities,* sec. 232. In *Graham* v. *Whit-
ridge, supra,* the terms and application of the rule were stated
and discussed by JUDGE McSHERRY as follows: "The period
fixed and prescribed by law for the future vesting of an estate
or interest, is a life or lives in being at the time of its com-
mencement and twenty-one years and a fraction of a year
beyond, to cover the period of gestation; and where property
is rendered inalienable or its vesting is deferred for a longer
period, the law denounces the devise, the bequest or the grant
as a perpetuity and declares it void. *Albert* v. *Albert,* 68
Md. 372; *Goldsborough* v. *Martin,* 41 Md. 501; *Barnum* v.
*Barnum,* 26 Md. 171 * * *. In determining this question
of remoteness, it is an invariable principle that regard is to
be had to possible and not merely actual events. It is not
determined by looking *back* on events which have occurred
and seeing whether the estate *has* extended beyond the pre-
scribed limit, but by looking forward from the time the limi-
tation was made and seeing whether, according to its terms,
there was then a possibility that it *might* so extend. 22 *Am.
& Eng. Ency.* (2d ed.) 707. The event upon the happening
of which the remainder is to vest must be one that is *certain*
to happen within the prescribed period or the limitation will
be bad."

In the present case the final limitation is to the appointees of a life tenant who was not in being when the will to which the power of appointment is to be referred became operative, or to the children of the life tenant in the event of her failure to exercise the power. This alternative limitation is plainly in conflict with the rule against. perpetuities. It provides for a future estate whose vesting is dependent upon a contingency which will not be determined until the expiration of a life which came into existence after the death of the original testator. Upon no possible theory can it be said that the remainder thus limited was certain to vest within the period prescribed by the rule.

It does not result, however, from this conclusion that the life estate given Mrs. Gambrill under the first power of appointment must be held invalid. On the contrary, the rule is that "Where an interest or estate is given by deed or will with a limitation over on a specified contingency, such limitation, if it violates the rule against perpetuities, is, for the purpose of determining the effect on the prior disposition of the property, to be considered as stricken out, leaving the prior disposition to operate as if a limitation over had never been made." *Graham* v. *Whitridge; Heald* v. *Heald, Supra; Goldsborough* v. *Martin,* 41 Md. 488; *Deford* v. *Deford,* 36. Md. 168. In view of this principle we have simply to determine whether the life estate provided for Mrs. Gambrill under the power of appointment conferred on her mother, Mrs. Clark, by the will of her grandfather, Dr. Edmondson, was certain to vest within the period of the rule against perpetuities. As the disposition is to be regarded as having been made by the will of the grandfather, the period must be computed with reference to the time of his death, and the limitation in question is to be treated as if made by him for the benefit of an unborn granddaughter for life upon the termination of preceding life estates to her parents. The vesting of the life estate of the granddaughter was limited to occur immediately upon the death of her father and mother,

both of whom were living when the grandfather's will took effect, and it was therefore certain to vest within a life then in being and the additional period of twenty-one years. The limitation would accordingly appear to be clearly consistent with the terms and purpose of the rule.

In the case of *Heald* v. *Heald, supra,* there was a devise in trust for the testator's son, Charles, for life, and after his death for the use and benefit of his children living at his death, in equal shares, for their lives. Upon the question as to whether this limitation for the lives of grandchildren who might be born after the testator's death was in conflict with the rule against perpetuities this Court said: "The life estate thus given to the children of Charles, who survive him, must take effect immediately on his death, or within the period allowed by law thereafter—that is, it must take effect immediately upon the termination of a life in being at the time of the death of the testator. It is well settled that a devise for life to the unborn child of a person who is living at the death of a testator is valid. *Stewart* v. *Cockerill,* 7 L. R. Eq. 366; *Avern* v. *Lloyd,* 5 L. R. Eq. 383; *Smith's Ed. of Fearn on Cont. Rem.,* Vol. 1. p. 502 marg.; Vol. 2, sec. 536a. If a limitation be good within the rule against perpetuities, it matters not whether the estate given be a fee or absolute property, or of a less or partial interest, as for life or otherwise. *Lewis on Perpetuities;* 52 *Law Lib.,* 172 marg.; 1 *Jarman on Wills,* 261 marg."

In *Graham* v. *Whitridge, supra,* a life estate had been created by the will of George Brown in favor of his daughter, Mrs. Greenway, and it was provided that in the event of her death without issue the estate should be held in trust for such of the testator's other children or descendants and in such proportions and for such estates as his daughter might by will appoint. In the exercise of this power, Mrs. Greenway disposed of the estate in part to certain great-grandchildren of the original testator for life and in remainder to their descendants. After holding that the ultimate

limitations in remainder were void for remoteness, the Court
next proceeded to consider whether the preceding life estates
were valid. None of the great-grandchildren to whom these
estates were given had been born when Mr. Brown died, but
they were all living at the time of the death of Mrs. Green-
way, the life tenant, and as she was in being when her
father's will took effect, it was held that the life estates were
bound to vest "within the period of a life in being and
twenty-one years beyond." "If," said JUDGE McSHERRY,
"we read into the will of George Brown, the donor, the dis-
positions made in the second and fifth clauses of Mrs. Green-
way's will, it is perceived at once that though the beneficiar-
ies of the life estate were not *in esse* at the time of the donor's
decease, the life estates created for them by Mrs. Greenway
are precisely such as would have been created had the donor,
instead of giving Mrs. Greenway the power of appointment,
inserted in its place a bequest of life estates to his great-
grandchildren without naming them, but describing them as
the grandchildren of his son, Alexander Brown, and his
daughter, Isabella Graham, living at the time of the death
of the donee of the power. Read in that way, there can be
no question that the life estates do not violate the rule against
perpetuities because instantly upon the death of Mrs. Green-
way they vested in these great-grandchildren who were then
all in being."

The cases of *Reed* v. *McIlvain* and *Thomas* v. *Gregg,
supra,* have been cited as sustaining the view that the limi-
tation we are now considering is invalid. In the latter case
a disposition was made by the will of John Gregg in trust
for the use of his daughter, Annie G. Thomas, for life, and
after her death for her issue then living, equally *per stirpes.*
The will also empowered the daughter to dispose of the trust
estate to "some" of Mr. Gregg's grandchildren or descendants.
Mrs. Thomas exercised this power by devising and bequeath-
ing the property in trust for her children then living, and
those thereafter born, during their respective lives. There

were three children to whom this description applied, one of whom had been born after Mr. Gregg's death. The question to be determined was whether the disposition made by the will of Mrs. Thomas, when read as a part of her father's will, was a valid exercise of the power of appointment. The limitation as thus read was for the lives of children who might be born to her after the death of the donor of the power. This was held to violate the rule against perpetuities.

In *Reed* v. *McIlvain,* the will of James Beatty had created a trust for the benefit of his daughter, Sarah E. McKim (who afterwards married Donald McIlvain) for the term of her natural life and after her death "for the use of such person or persons or for such uses and purposes," as she might appoint by her last will and testament. In the execution of this power Mrs. McIlvain left a will by which she gave part of the estate to trustees for the benefit of her four children during their respective lives. Three of these were living at the time of the death of their grandfather, James Beatty, and one was born subsequently. The limitation in question, being read into Mr. Beatty's will, provided a life estate for children of his daughter who might be born to her after his death, and for this reason it was held to be in conflict with the rule.

The decision in *Reed* v. *McIlvain* followed by distinct reference the ruling in *Thomas* v. *Gregg,* and that case appears to have been controlled by a statement quoted from the opinion in *Barnum* v. *Barnum, supra,* that: "If an estate be so limited as by possibility to extend beyond a life or lives in being at the time of its commencement, and twenty-one years and a fraction of a year (to cover the period of gestation) afterwards, during which time the property would be withdrawn from the market, or the power over the fee suspended, it is a perpetuity, and void as against the policy of the law which will not permit property to be inalienable for a longer period." In the *Barnum case* the Court was passing upon the validity of a trust under which express power was conferred upon the trustees, and their heirs and successors, to

execute leases of the trust property so long as the testator's children or any children or descendants left by any of them at their death should live, any lease executed during the period thus described to be effective for its stipulated term notwithstanding the previous cessation of all the lives mentioned. The point decided was that the trust was void because it involved the execution of leasing powers beyond the period allowed by law. In *Reed* v. *McIlvain* and *Thomas* v. *Gregg* the principle of the *Barnum case* was construed and applied as confining the *duration* of a trust within a life or lives in being and twenty-one years thereafter, and not as merely restricting the *future vesting* of an estate within that period. This theory of the rule is not in accord with its purpose and effect, as defined in the earliest decisions of this Court on the subject, and in its statement of the rule in the recent cases of *Levenson* v. *Manly, supra, Starr* v. *Starr M. P. Church, supra, and Hollander* v. *Central Metal Co., supra,* as well as in the cases of *Heald* v. *Heald and Graham* v. *Whitridge* to which we have more particularly referred. As we adhere to the principle of the rule as there expressed and find it controlling in the present case, we must hold that the limitation under the power of appointment in Dr. Edmondson's will for the life of Mrs. Gambrill, after the life estates provided for her parents, is not in violation of the rule against perpetuities and is a valid exercise of the power.

The will of Dr. Edmondson provided, as already noted, that upon the death of any of his daughters intestate, after marrying or becoming twenty-one years of age, her share of the estate should belong to her heirs under the laws of Maryland. Inasmuch as the attempted appointments by Mrs. Clark, after her daughter's life estate, were void under the rule against perpetuities, she must be held to have died intestate, within the meaning of her father's will, as to the estate in remainder, and that interest, therefore, passed under the latter will to Mrs. Gambrill as her mother's only heir at law. It thus develops that the appellant is entitled to both

the life estate and the remainder in the property involved in these proceedings, and as there is no intervening interest, a merger of these estates has occurred, by reason of the unity of her ownership, and she is consequently invested with a complete and unqualified title.   16 *Cyc.* 667; *Starr* v. *Starr M. P. Church* 112 Md. 180.   The decree of the learned Court below did not apply the principle of merger, but proceeded upon the theory that the life estate of Mrs. Gambrill is still outstanding and that the remainder will not vest until her death in the heirs at law of her mother under the provisions of her grandfather's will.   To this extent we are unable to concur in the conclusions embodied in the decree. The contingency upon which the limitation to the heirs of Mrs. Clark depended was her death intestate as to the interest in remainder.   This has actually occurred, and the remainder must accordingly be held to be vested in Mrs. Gambrill as the only person answering to the description of those entitled to take upon the happening of such a contingency. It will therefore be necessary to remand the proceedings in order that the decree may be modified in conformity with this view and the estate of the appellant decreed to be absolute.

> *Decree affirmed in part and reversed in part, and cause remanded to the end that the decree may be modified in accordance with the opinion, the costs to be paid out of the estate.*