**PARKER et al. v. MACBRYDE et al.**
**DAVIDGE v. SAME.**
Nos. 4997, 5019.

Circuit Court of Appeals, Fourth Circuit.
Dec. 30, 1942.

Frederick W. Brune and Edwin F. A. Morgan, both of Baltimore, Md. (Semmes, Bowen & Semmes, of Baltimore, Md., on the brief), for appellants in No. 4997.

Eben J. D. Cross, of Baltimore, Md., for appellants in No. 5019.

James Morfit Mullen and R. Contee Rose, both of Baltimore, Md., for appellees in both cases.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The validity of the exercise of a power of appointment under a will is the subject matter of these cases. Mary Donaldson, the testatrix and donor of the power of appointment, died in Baltimore on May 20, 1920, leaving a will dated March 20, 1917, duly probated, which, so far as material here, provided as follows: "Second. To my niece, Sara J. Parker, I give and bequeath the sum of Five Thousand Dollars ($5,000) absolutely; and the additional sum of Ten Thousand Dollars ($10,000) for and during her natural life and after her death·I bequeath the said Ten Thousand Dollars ($10,000) to her brothers and sister of the whole blood in such proportions as she may designate by her last will and testament, but should she die intestate the said sum of money shall be divided among them equally."

When Mary Donaldson executed her will and when she died, the brothers and sister of the whole blood of Sara J. Parker, then living, were Robert B. Parker, Henry P. Parker, LeRoy Parker and Mary B. Winder; and both parents of these per-

sons were deceased. Henry P. Parker died February 15, 1925; Robert B. Parker died August 2, 1940; Sara J. Parker died November 12, 1940; LeRoy Parker died February 12, 1941; Mary B. Winder is still living.

Sara J. Parker, by her will dated March 23, 1927, provided as follows:

"The sum of ten thousand dollars, under the will of my aunt Mary Donaldson (which said will is now of record among the records of the Orphans' Court of Baltimore City) which I was to enjoy for life with the right of disposition to my brothers and sister at my death, I give and bequeath in equal parts to my brothers LeRoy Parker and Robert B. Parker and my sister, Mary D. Winder.

\* \* \* \* \*

"All the rest and residue of my estate I give and bequeath to my brothers, LeRoy Parker and Robert B. Parker, and to my sister, Mary D. Winder, share and share alike."

The litigation orginated when Malcolm H. MacBryde, Jr., individually and as administrator c.t.a. of LeRoy Parker, deceased, brought suit against Paul M. Burnett, who was administrator d.b.n. c.t.a. of the estate of Mary Donaldson and attorney for Sara J. Parker. In the latter capacity he retained custody and invested the avails of the $10,000 legacy during the life of Sara J. Parker; and it was conceded that he was chargeable therewith as if he had been a technical trustee. In this suit it was held by decree of the District Court, 44 F.Supp. 833, affirmed by us this day in 132 F.2d 898, that by reason of investment and reinvestment, the corpus of the fund to be accounted for consisted of the cash sum of approximately $34,000 and certain securities. Burnett has paid the cash sum into court and retains custody of the securities under the decree pending the determination of these appeals.

The decree of the District Court further provided that the corpus of the fund belongs in equal parts to Mary D. Winder, surviving sister of Sara J. Parker, and Malcolm H. MacBryde, Jr., in whom was vested the interest of LeRoy Parker, surviving brother, now deceased, of Sara J. Parker. An appeal from this part of the decree, case No. 4997, was taken by Alice D. Parker, executrix of Robert B. Parker deceased, and also individually, and by Robert B. Parker, Jr. Alice D. Parker is

the widow and sole beneficiary under the will of Robert B. Parker, and Robert B. Parker, Jr., is his son. They claim a one-third interest in the fund by reason of the will of Sara J. Parker.

The representatives of Henry P. Parker are John W. Davidge individually and as trustee or assignee of Eleanor R. Parker, widow of Henry P. Parker, and as executor of her estate, and Catherine Ridgely Brown. They were not parties to the original proceeding but were subsequently brought in by petition of the plaintiff and have set up a claim to one-fourth of the fund. This claim was denied by supplemental decree of the court and the original decree was affirmed whereby the fund was allotted in equal parts to Malcolm H. MacBryde, Jr., and Mary Winder. An appeal from this supplemental decree was taken in case No. 5019.

Thus it appears that when Mary Donaldson made her will and when she died, there were four persons who were qualified to take under the power of appointment in her will as "brothers and sister of the whole blood" of Sara J. Parker, the donee of the power; and these persons were definitely established as the only ones who could take because their parents were dead. Of the four persons, one brother, Henry, died before Sara Parker made her will; and in the exercise of the power in that instrument she bequeathed the fund in equal parts to the remaining three, LeRoy, Robert and Mary. Robert died before her, and only two of the beneficiaries of the power, LeRoy and Mary, survived her. The effect of the decrees appealed from is to allot to each of these two, or their representatives, one-half of the fund and to exclude altogether from participation the two deceased brothers, Robert and Henry, and their representatives.

 The opinion of the District Court, 45 F.Supp. 451, is based primarily on the general principle recognized in the Maryland decisions which are controlling here, that an appointment to a person who is dead is ineffective. Restatement, Property—Future Interests, parts 3 and 4, § 349; Allder v. Jones, 98 Md. 101, 108, 56 A. 487; Smith v. Hardesty, 88 Md. 387, 390, 41 A. 788. On account of this rule the District Court held that the omission of Henry from the donee's will was valid; that the appointment therein of one-third of the fund to Robert was void, and that the remaining two appointees, LeRoy and

Mary, should each take a half of the fund instead of a third as directed by the donee.

■■■ The acceptance of this rule in Maryland is not questioned by the appellants; but it is said that it is not applicable here because of the character of the estate which the four persons, to whom the appointment was limited, took under the Donaldson will. As the District Court found, the law of Maryland favors vested rather than contingent remainders and the earliest possible vesting of estates, and since the parents of the persons mentioned were deceased, and the identity of the persons intended by Mary Donaldson was definitely fixed at the time of the execution of her will, the estate which they took was a vested remainder in the fund, defeasible only by the affirmative exercise of the power granted to Sara J. Parker to divide the fund amongst them. The Maryland decisions support the conclusion that the remainder was vested, although it was given subject to the power of appointment. Robinson v. Mercantile Trust Co. of Baltimore, 180 Md. 336, 24 A.2d 299, 138 A.L.R. 1427; Gittinger v. Farmers & Mechanics Nat'l. Bank, Md., 26 A.2d 414; Mercantile Trust Co. v. Bergdorf & Goodman Co., 167 Md. 158, 173 A. 31, 93 A.L.R. 1205.

Bearing in mind the character of the estate thus taken by the brothers and sister of Sara Parker under the Donaldson will, the representatives of the estate of Robert Parker rely on a distinction, drawn by certain decisions, between a direct gift by will of an estate in remainder to a group of legatees, coupled with the power in the holder of the life estate to appoint the proportions which the members of the group shall take, and a gift of a power to a donee to make a new disposition of the property. These decisions hold that if the estate in remainder is of the kind first described, all the members of the class take in default of appointment, whether they survive the life tenant or not; but if the estate in remainder is of the kind secondly described, only those take in default of appointment who might have taken under the exercise of the power. Lambert v. Thwaites, [1866] L.R. 2 Eq. 151; American Brass Co. v. Hauser, 1938, 284 Mich. 194, 278 N.W. 816, 115 A.L.R. 1464; Casterton v. Sutherland, 1804, 9 Ves.Jr. (Ct. of Chancery) 445; Miller, Construction of Wills, § 71, p. 199; Perry on Trusts and Trustees, 7th Ed. Vol. 1, § 250. In the cited cases there was no exercise of the power of appointment and the property was distributed to the remaindermen whether or not they predeceased the donee of the power.

The representatives of Robert Parker contend that the same result should follow even if there is an exercise of the power, and that in such case the rule, that an appointment to a person who is dead is ineffective, does not apply. It is said that unless this conclusion is adopted, the effect will be that the vested remainder to the four persons under the will of Mary Donaldson will be cut down to a contingent remainder to such of them as survived the donee of the power. The District Judge rejected this contention, pointing out that there are no Maryland authorities on the point and concluding that the logical effect ordinarily given to a vested remainder should give way to the clearly established rule that an appointment to a deceased person is ineffective.

■■■ We do not find it necessary to decide the point, for even if the appellants' contention is sound, the exercise of the power in the manner prescribed in the Parker will and the appointment of one-third of the fund to Robert Parker could not be sustained. Sara Parker confined the apportionment of the fund to three of the four persons in whom the remainder vested under the Donaldson will; but, under the principle contended for, deceased as well as surviving remaindermen are qualified to take and therefore she had no power to exclude any of them. She was obliged to apportion a substantial part not only to LeRoy and to Mary, who survived her, but also to Henry, who died before the execution of her will, and to Robert, who died after the execution of her will but before her death. In this view of the case the entire appointment would be void, since she was endowed only with a special non-exclusive power which gave her no right to exclude any of the four. The rule on this subject is stated as follows in Restatement—Property—Future Interests, Parts 3 and 4:

"§ 361. Exercise of Non-Exclusive Powers.

"(1) Where the donor has manifested an intent that no object of a special power shall be excluded from distribution of the property but has not specified a minimum amount to be received by each object, an appointment is ineffective which, if put in-

to effect, would prevent any object then living from receiving, either by appointment or in default of appointment or both, a substantial part of such property."

See, also, § 361 Illustration 1; Miller on Wills, § 263; Allder v. Jones, 98 Md. 101, 56 A. 487.

It follows that even if the exercise of the power in favor of one who predeceased the donee was effective under the Donaldson will, the actual exercise of the power, omitting Henry, would be totally ineffective, and the fund would be divided equally amongst the three brothers and one sister of Sara Parker in accordance with the provision of the Donaldson will applicable in case Sara Parker should die intestate.

■ We next consider the opposing theory of the District Court that the appointment of one-third of the fund to Robert Parker by the donee of the power was ineffective because he predeceased her. If we make this assumption, it becomes necessary to apply the rule in respect to the effect of a partially invalid exercise of a special power of appointment which is set out in the Restatement, .Property—Future Interest, § 362 as follows:

"Whether Ineffectiveness of Part of Appointment Caused Other Parts to Fail.

"Where one part of an appointment is ineffective, but another part would, if standing alone, be effective, such other part is given effect unless

"(a) the two parts are so mingled that it is impossible to fix the line of division between them, or

"(b) the donee's scheme of disposition is more closely approximated by allowing both parts to pass in default of appointment than by treating as valid the latter part of the appointment and allowing only the property covered by the former part to pass in default."

The Comment on Clause (b) of § 362 of the Restatement is in part as follows:

"b. Rationale. Whenever part of a dispositive scheme fails, and it is possible to separate that part from the balance of the disposition, there always arises the question whether that part was so essential to the whole that its failure causes the failure of the remaining parts, of themselves valid. The answer to this question depends upon whether the general dispositive scheme disclosed in the instrument is more nearly approximated by treating

as effective the remaining part or by allowing the property to pass to those persons who would receive it if no disposition had been attempted; for it is inferred that the person making the disposition desires the remaining part to stand only if thereby the purposes of the original disposition are advanced. When the partial invalidity so distorts the dispositive scheme that it is inferable that the person making the disposition would not prefer· the balance to stand alone, then the entire disposition fails.

"This general rule is applicable in cases where the donee of a power has made an appointment which is partially ineffective. If the general scheme of appointment shown in the donee's instrument would be better carried out by allowing the property to pass in default of appointment, the entire appointment fails and the property passes in default."

This rule is recognized in the Maryland decisions. See, Myers v. Safe Deposit & Trust Co., 73 Md. 413, 21 A. 58; Graham v. Whitridge, 99 Md. 248, 279-281, 57 A. 609, 58 A. 36, 66 L.R.A. 408; Reed v. MacIlvain, 113 Md. 140, 77 A. 329. See, also, Old Colony Trust Co. v. Richardson, 297 Mass. 147, 7 N.E.2d 432, 121 A.L.R. 1218, 1226, note.

Applying this rule the District Judge decided that there was no reasonable ground to conclude that the appointment as a whole was ineffective. He further held in view of such decisions as Kennedy v. Kingston, Ch. 1821, 2 Jacobs & Walker's Rep. 430 and Freeland v. Pearson, [1867] L.R. 3 Eq. 658, that as the survivors of the four persons were in law the only objects of the power, LeRoy and Mary should take not only the shares appointed to them by the will but also in equal parts the share lapsing by the death of Robert. This conclusion was fortified by the view that Mary Donaldson must be presumed to have intended that the power given by her should be exercised only in favor of survivors of the donee. See, American Brass Co. v. Hauser, 284 Mich. 194, 278 N.W. 816, 115 A.L.R. 1464, 1470, note.

■ At the basis of this conclusion was the necessary determination that the donee's scheme of disposition would be more closely approximated by a failure of one part of the appointment than by allowing the whole fund to pass in default. There is some ground for this conclusion, for if the whole appointment fails, then under

the Donaldson will Henry's estate will come in for a fourth part in spite of the fact that Sara Parker clearly intended to exclude him. See, Restatement § 362, Illustration to Clause (b) 2, IV. But, in our view, the frustration of the donee's intention by eliminating Robert entirely from the distribution and by increasing the shares of LeRoy and Mary from one-third to one-half is a more weighty circumstance. It seems clear to us when we contrast the choice, on the one hand, of cutting out Robert's estate altogether and giving his share to the two survivors, and, on the other hand, admitting Henry to the distribution and giving each of the four persons or their estates an equal share of the fund as directed by the Donaldson will in case of the donee's intestacy, that the latter alternative would more clearly approximate the donor's scheme of disposition; while the former alternative would clearly distort her intention. See, Restatement § 362, Illustration to Clause (b), 2 II, III. In making this decision we are not required to presume, contrary to the fact, that Sara Parker intended that her appointment should be effective only as to the persons who survived her. On the contrary we should be governed by the intention expressed in her will, and should then determine whether that intention will be better served by giving effect to a part of the appointment or by ruling that all of it was ineffective.

The Maryland cases are in accord with this view. In Myers v. Safe Deposit & Trust Co., 73 Md. 413, 21 A. 58, a testator gave the residue of his estate to his wife for life and after her death to such of his children and grandchildren as she should appoint by will, and in default of such appointment, then to his children and grandchildren as if he had died intestate. By her will the wife appointed one-third of the estate to a son absolutely and one-ninth thereof to a grandson absolutely, and these appointments were held to be good. But as to the other five-ninths of the estate she created trusts for life with remainders over, and these were held to be bad since the testator desired the nominees to take an absolute estate in the property and gave the wife no power by implication or otherwise to create a trust. The question then arose whether the well executed appointments must fail because of the invalidity of the other appointments. The court cited the statement from Sugden on Powers, Vol. 2, p. 202, that ordinarily well appointed portions stand and the appointees are not excluded from shares of the unappointed part, if they belong to the class taking because of the default; but the court held that in the case before it all of the appointments must fail, because a contrary holding would defeat the manifest intention of the original testator, that his whole estate should pass to those designated by his wife, and would also defeat the whole scheme and purpose of her will. The court said (73 Md. at pages 422, 423, 21 A. at page 60).

"If by following that statement of the law made by Mr. Sugden we would defeat the manifest intention of Charles Myers in respect to his estate, and also the whole scheme and purpose of the will of Mrs. Myers, the donee of the power, we do not think we ought to do such violence to the intentions of these testators.

\* \* \* \* \* \*

"It is still clearer that Mrs. Myers, in executing the power and making her appointments, made them on the theory and belief that she was properly executing the power conferred upon her. She evidently supposed that the trusts she created for life with contingent limitations over were as effectual and valid execution of her power as the gifts to her son and her grandson. She did not design her son or her grandson to have any more of the estate than she named them to take; whereas, if the appointments to them are upheld, and they are also admitted to share in unappointed portions, they will get largely more than a due and fair proportion of the estate. This was clearly not designed by Mrs. Myers, and we ought not to give effect to that which she did not contemplate as the result of her will. Inasmuch, therefore, as we cannot support Mrs. Myers' will in the attempted execution of the power, as she has expressed it, we think that we ought to treat her effort to execute the power as wholly abortive, and to allow the whole estate of Charles Myers to pass as if he had died intestate. This will certainly do exact justice, for equality is equity, and will better meet the wishes of both testators than by supporting the partial appointments which are apparently good."

This decision was approved and followed in Reed v. McIlvain, 113 Md. 140, 77 A. 329, where the testator left certain property by will in trust for his daughter for life and after her death for such persons

as she should by will appoint, and in default of appointment, for her heirs. The daughter left four children, one of whom was born after the death of her father. In execution of the power she gave one-fourth of the property to each of two of her children absolutely, and the remaining two-fourths to trustees, one part for the benefit of each of the other two children for life with power of appointment, and in default thereof, to the heirs' of the testatrix. It was held that the appointment to the child born after the death of the donor of the power was void because it violated the rule against perpetuities, and that since that appointment was void, the other appointments must also fail since the testatrix obviously intended to divide the property equally among her children, and the entire scheme of her will should not be defeated.

In Graham v. Whitridge, 99 Md. 248, 57 A. 609, partial invalidity of appointments under the will of the donee of the power was held not to invalidate the whole. Properly appointed life estates were allowed to stand, while remainders which violated the rule against perpetuities were stricken down. The result was that the property included in the remainders passed to the children and descendants of the donor of the power. In this result there was no such disregard of the general scheme of the donee's will as appears in the decrees under consideration, and no repudiation of the principle set out in § 362 of the Restatement and applied in the earlier and later Maryland cases in which the appointment was declared to be totally invalid. In these two cases there was a blending in the donee's will of the individual assets of the donee with assets covered by the power of appointment, while there was no such blending in Graham v. Whitridge; and this fact was noted in discussing the equitable doctrine of election which is sometimes applied when a legatee seeks to benefit by upholding one part of a will and condemning another. This doctrine has not been invoked by any party in the pending case; and it is clear from a careful examination of the two cases in which total invalidity ·was declared that the result depended not on the blending of assets but upon the determination of the court to effectuate as far as possible the intention of. the testatrix.

In short, it is our conclusion that the exercise of the power in the Parker will was totally ineffective, whether the appointment to a deceased person be considered valid or invalid in the exercise of the power conferred by the Donaldson will; if valid, because the power was non-exclusive; if invalid, because it would be contrary to the intention of the Parker will to strike down the appointment to the deceased person and divide the fund among the survivors. The decrees appealed from must therefore be reversed, and the cases remanded for further proceedings.

Reversed and remanded.